Markieth Tyrone GRANGER,
Appellant,

v.

The STATE of Texas.

No. 1651–98.

Court of Criminal Appeals of Texas.

Sept. 29, 1999.

Sandra Reynolds, Dallas, for appellant.

Libra Lange, Assist. DA, Dallas, Matthew Paul, State's Atty., Austin, for the State.

## OPINION

MEYERS, J., delivered the opinion of the Court in which MANSFIELD, PRICE, HOLLAND, WOMACK, JOHNSON and KEASLER, JJ., joined.

Appellant was convicted of murder and sentenced by a jury to a term of fifty-five

years confinement. *See* TEX. PENAL CODE ANN. § 19.02(b)(1) & (2) (Vernon 1994). The Court of Appeals affirmed appellant's conviction in an unpublished opinion. *Granger v. State*, No. 05–96–00926–CR, slip op. at 9, 1998 WL 237262 (Tex.App.— Dallas 1998) (opinion on rehearing). We granted review to determine whether the Court of Appeals erred in holding that appellant was not entitled to an affirmative "mistake of fact" instruction pursuant to § 8.02 of the Texas Penal Code.

In the early hours of February 4, 1995, appellant and three companions were ejected from a Dallas nightclub for "dancing dirty." The club's security guard testified that a young man who was with appellant became angry at the prospect of being thrown out of the club and argued with the security guard. The guard escorted the four young people out and then went back inside the club.

A few minutes later, the security guard went back outside to see if the group had left the area. In a parking lot across the street, the guard saw appellant and the other young man walking back toward the club. The security guard stepped back inside. The guard told the doorman that the two men were still out there and that he suspected that "they might be up to something." After about five minutes, the security guard again went outside and immediately heard two or three gunshots. He looked up to see where the shots were coming from and saw appellant and his companion standing on the passenger side of a car parked across the street from the club. The two men were standing on the curb looking down into the car with their arms extended toward the car. The security guard then saw two or three "flashes" accompanied by the sound of additional gunshots. The guard testified that at first he thought they were shooting into an empty car and started to walk toward the men. But when he got about half way across the street, he noticed the victim sitting in the driver's seat of the car. The guard yelled at the men. The two men then looked up and ran down a nearby alley. The victim later died of multiple gunshot wounds.

On March 17, 1995, appellant gave a voluntary written statement in which he said that only his companion had shot into the car and that appellant did not know why he had done so.[1] Five months later, the police arrested appellant, at which time he gave a second written statement. That statement provided:

> That night in February when me and Pam, Debbie, and Jerome went to the R.L. Blues Palace, we all got kicked out and walked over to Pam's car. Jerome was mad at the security guard for kicking us out, and he kept arguing with him. I tried to tell him to come on, and let's go but he grabbed a gun from inside Pam's car. I seen him grab his gun so I grabbed mine. It was a .32 or .380 automatic. We walked over across the street towards the security guard but he was already back inside the club. We turned and started walking back to Pam's car. Jerome then saw this car parked on the side of the street and that's when he started saying, "I know that car." We walked right past the car and Jerome started shooting at the car. When he started shooting *I didn't think that anybody was inside the car* so I started shooting at the car also. I fired about four shots. We then ran off and flagged down Pam's car over on the next street.

1. Appellant's first statement to the police indicated that the young man named Jerome noticed the victim's car as they walked back toward the club. Jerome allegedly kept repeating, "I know that car." Appellant stated that he walked past the car and that Jerome was behind him. Appellant said that he then heard gunshots and turned around to see Jerome putting something in his waistband. Both men then ran down the alley and flagged down their friend's car on the next street. Appellant said that he was "too scared" to ask Jerome why he had shot at the car and that Jerome did not volunteer why he had done so.

(emphasis added). The State offered both of appellant's written statements into evidence at trial.

The court's proposed jury charge included an instruction on murder and the lesser included offenses of manslaughter and criminally negligent homicide. Defense counsel objected to the proposed charge inasmuch as it did not contain an instruction on mistake of fact. The trial court overruled the objection. Appellant was convicted of murder.

In the Court of Appeals, appellant claimed the trial court erred in denying his request for an affirmative instruction on mistake of fact. Specifically, appellant argued that the portion of his statement in which he claimed that he thought he was firing into an empty car was sufficient to raise the statutory defense under § 8.02. In an unpublished opinion, the Court of Appeals affirmed appellant's conviction. *Granger*, slip op. at 9. While the Court of Appeals acknowledged the general rule that an accused has the right to an instruction on any defensive issue raised by the evidence, *id.*, slip op. at 3, the court nevertheless concluded that the defense of mistake of fact was not "raised" by the record because appellant had failed to present any evidence that his mistaken belief was "reasonable." *Id.*, slip op. at 4–5. The lower court stated, "appellant's purported mistaken belief that the car was empty was formed not through mistake, but by indifference. Given this, there is also no evidence that appellant's purported mistaken belief that the car was unoccupied was one that a reasonable and prudent person would have had under the same circumstances." *Id.*, slip op. at 5. Because appellant's mistake was "unreasonable," reasoned the lower court, he was not entitled to an affirmative instruction under § 8.02 of the Penal Code. *Id.*

 It is well settled that an accused has the right to an instruction on any

defensive issue raised by the evidence, whether that evidence is weak or strong, unimpeached or contradicted, and regardless of what the trial court may or may not think about the credibility of the evidence. *Hamel v. State*, 916 S.W.2d 491, 493 (Tex. Crim.App.1996); *Miller v. State*, 815 S.W.2d 582, 585 (Tex.Crim.App.1991) (opinion on rehearing); *Hayes v. State*, 728 S.W.2d 804, 807 (Tex.Crim.App.1987) (opinion on rehearing); *Dyson v. State*, 672 S.W.2d 460, 463 (Tex.Crim.App.1984); *Montgomery v. State*, 588 S.W.2d 950, 952–53 (Tex.Crim.App. [Panel Op.] 1979); *Warren v. State*, 565 S.W.2d 931, 933–34 (Tex.Crim.App. [Panel Op.] 1978).[2] This rule is designed to insure that the jury, not the judge, will decide the relative credibility of the evidence. *Miller*, 815 S.W.2d at 585; *see also Woodfox v. State*, 742 S.W.2d 408, 410 (Tex.Crim.App.1987) ("When a judge refuses to give an instruction on a defensive issue because the evidence supporting it is weak or unbelievable, he effectively substitutes his judgment on the weight of the evidence for that of the jury"). Therefore, the issue before the appellate court was whether appellant's statement that he did not think anyone was in the car, if believed, raised a mistake of fact defense. *See Dyson*, 672 S.W.2d at 463. If the evidence viewed in a light favorable to appellant does not establish a mistake of fact defense, an instruction is not required. *Id.*

The general defense of mistake of fact, as codified in Tex. Penal Code Ann. § 8.02(a) (Vernon 1994), provides: "It is a defense to prosecution that the actor through mistake formed a reasonable belief about a matter of fact if his mistaken belief negated the kind of culpability required for the commission of the offense." This case pivots on the phrase "reasonable belief." The question we are faced with is whether the reasonableness requirement is a preliminary issue for the judge to decide

---

**2.** It is also settled that an affirmative instruction may be required whether the evidence raising the defensive issue is presented by the

State or by the defense. *Woodfox v. State*, 742 S.W.2d 408, 410 (Tex.Crim.App.1987).

in determining whether each element of the defense was "raised" by the evidence, or whether it is a fact issue that should be left to the jury.

■ The State argues, and the Court of Appeals held, that the reasonableness of an accused's mistaken belief may be evaluated by the trial judge in determining whether the statutory defense is raised. But the appellate court's holding is contrary to this Court's previous decision in *Hayes v. State,* 728 S.W.2d 804, 808 (Tex. Crim.App.1987) (opinion on rehearing). *Hayes* dealt with a defendant's "reasonable belief" in the related context of a jury instruction involving "Deadly Force in Defense of Person" under § 9.32 of the Penal Code. There, we held that whether the defendant's belief was "reasonable" was a fact issue for the jury to decide. *Id.* at 808. In *Hayes* the appellant, convicted by a jury of aggravated assault, complained on appeal of the trial court's refusal to give an affirmative "deadly force" instruction. *Id.* at 807. Like mistake of fact under § 8.02, the use of deadly force under § 9.32 requires a "reasonable belief" on the part of the actor that deadly force is immediately necessary. *See* TEX. PENAL CODE ANN. § 9.32 (Vernon 1994). The State argued that at the time appellant fired his gun, he could not have "reasonably believed" that he was in such immediate peril. *Hayes,* 728 S.W.2d at 807. This Court rejected the State's argument and held:

> Whether the appellant's beliefs were reasonable and justifiable and whether or not the appellant used more force than necessary under the circumstances were fact questions for the jury to decide. In denying appellant's requested charge on the use of deadly force the trial judge was denying the jury the opportunity to decide this issue.

*Id.* at 808 (citation omitted); *see also Sanders v. State,* 707 S.W.2d 78, 79–80 (Tex.Crim.App.1986) ("[I]t is *not for the trial court to judge the reasonableness or viability of the alleged defense;* such de-

termination is rightfully left to the trier of facts, in this case the jury") (emphasis added), *limited on other grounds, Willis v. State,* 790 S.W.2d 307, 313–14 (Tex.Crim. App.1990); *Rodriquez v. State,* 544 S.W.2d 382, 384 (Tex.Crim.App.1976) ("[W]hether appellant's beliefs, fears and actions were reasonable as required by statute, were also fact issues for the jury,* but the jury was also deprived of the opportunity to decide those issues because of the failure to instruct the jury on self-defense") (emphasis added).

■ We see no reason to depart from the *Hayes* holding here. Whether appellant's mistaken belief was "reasonable," so as to comport with the requirements of § 8.02, should have been left for the jury to decide as trier of fact. By failing to give the appropriate instruction, the trial court denied the jury the opportunity to decide this issue.

The State neglects to distinguish, or even mention *Hayes.* Instead, it draws upon dicta to support its argument that the trial court properly evaluated the reasonableness of appellant's mistaken belief. For example, the State cites a footnote in *Graham v. State,* 566 S.W.2d 941, 952 n. 3 (Tex.Crim.App.1978), as "holding that if no evidence of the applicable standard of reasonableness is proffered to raise [the] fact issue, [the] determination is outside of [the] jury's discretion." State's Brief at 9. The relevant footnote in *Graham* provides:

> The limits of many defenses are left to the jury. Such limits are usually expressed in terms that leave to the jury the application of norms that are not readily susceptible to reduction to a concise factual formula. The jury in this sense participates in determining the law as well as the facts. Many defenses exhibit this characteristic through the incorporation of a standard of "reasonable belief." ... According to the standard and scope of the issue, the degree of discretion accorded to the jury in resolving the issue on undisputed facts will vary. Before such a decision may

be overturned on appeal, the fact issue must be undisputed or resolved to one end of the spectrum, *and* that fact determination must be found to lie outside the realm of discretion accorded the jury under the applicable standard, be it "reasonable belief," "reasonable firmness," "likely to cause," or some other. *Id.* at 952 n. 3 (emphasis in original). By itself, this footnote suggests that while reasonableness is generally a fact issue for the jury, there may be situations where the reasonableness of a defendant's beliefs are properly evaluated by an appellate court. However, *Graham*'s language should not be divorced from its context. *Graham* involved an appeal in which the appellant argued that the jury's verdict on the question of his sanity was against the weight of the evidence because the State had failed to produce any expert witnesses to counter the defense's psychiatric evidence. *Graham,* 566 S.W.2d at 950. The *Graham* Court declined to overturn the jury's findings because the issue of insanity "is not, strictly speaking, one of medical fact." *Id.* at 952. Instead, the Court concluded that the legal defense of insanity also encompassed an "inarticulable ethical component" that was properly left to the jury's discretion. *Id.* at 953. Placed in its proper context, then, the *Graham* footnote merely illustrates how the "limits" of a given defense, and the vagaries that defense might employ, are often left to the jury's discretion. *Id.* at 952. In any case, the *Graham* decision does *not* purport to decide whether a jury instruction is warranted in a given situation.[3]

■ Moreover, a holding in accordance with the State's position would tend to undermine the general rule that the jury should be responsible for gauging the credibility and veracity of the defensive evidence. *See Dyson,* 672 S.W.2d at 463 ("The issue before this Court is not the truth of appellant's testimony, for that is for the jury"); *Montgomery,* 588 S.W.2d at 952 ("The issue on appeal is not whether appellant's story is true or even believable. That issue is exclusively for the jury as trier of fact"). Trial court judges charged with evaluating the "reasonableness" of an accused's beliefs, no matter how well intentioned, would inevitably be placed in a position in which they were required to make their own decisions about the weight and believability of the defensive evidence. The Court of Appeals' opinion illustrates this dilemma. In reaching its conclusion that there was no evidence to support a "reasonable belief" that the car was empty, the court was forced to engage in its own subjective evaluation of the evidence:

The victim's car was parked on the street in a line of cars directly opposite the front door of a nightclub that was open for business. Photographs admitted into evidence indicate the car's windows were clear and transparent. Photographs and testimony of the security guard indicate the area was well lit with street lights and lights from the club. There is no evidence in the record that appellant looked into the car—or did anything else—to determine whether the car was occupied before shooting into it. Given the fact that appellant had walked "right past" the car before he started shooting, he could easily have discovered the victim's presence. Thus, appellant's purported mistaken belief

**3.** Although not mentioned by the parties, there is also language in *Hamel v. State,* 916 S.W.2d at 493–94, that suggests that a court might properly determine that a defendant's belief is unreasonable as a matter of law. In *Hamel* this Court evaluated the evidence as it pertained to a defendant's request for a self-defense instruction, which also contains an element of reasonableness. The *Hamel* Court did *not* decide whether the reasonableness of the appellant's belief may be evaluated by the trial court in deciding whether to give an affirmative instruction. Nevertheless, the Court did state that on the facts presented it could not say that it was "unreasonable" for appellant to believe that deadly force was necessary. *Id.* at 494. This, coupled with its determination that the defense was otherwise raised, led the Court to conclude that it was error to deny the appellant's request for an affirmative instruction. *Id.*

that the car was empty was formed not through mistake, but by indifference.

*Granger,* slip op. at 4–5. But whether appellant had the *opportunity* to correct his mistake is precisely the sort of fact issue properly left to the jury. The condition of the car's windows, the lighting on the street at the time of the shooting and appellant's failure to take advantage of a chance to look inside the car are all details that the State may argue in its closing statement. But the use of those factual details to bolster a court's conclusion that an accused's belief is unreasonable as a matter of law does exactly what the law forbids—it effectively substitutes the court's judgment on the weight of the evidence for that of the jury. *See Woodfox,* 742 S.W.2d at 410.

 "When an accused creates an issue of mistaken belief as to the culpable mental element of the offense, he is entitled to a defensive instruction of 'mistake of fact.' " *Miller,* 815 S.W.2d at 585. Therefore, in the instant case, the issue before the trial court was whether appellant's purported belief, if accepted as true, negated the culpability required for murder. *See, e.g., Hill v. State,* 765 S.W.2d 794, 796 (Tex.Crim.App.1989) (holding appellant was entitled to instruction on mistake of fact when mistake negated culpability required for the offense). Clearly, it does. Section 19.02(b) of the Texas Penal Code provides, in relevant part:

> (b) A person commits an offense if he:
>
> (1) intentionally or knowingly causes the death of an individual;
>
> (2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. . . .

Accepting appellant's statement to the police as true, he could not have "intentionally or knowingly" caused the death of the victim, or "intend[ed] to cause serious bodily injury" to the victim if appellant did not know that the victim was in the car. Appellant was therefore entitled to a jury instruction on mistake of fact pursuant to § 8.02 of the Penal Code.

The Court of Appeals erred in denying appellant's request for a mistake of fact instruction. Whether appellant's purported belief that the car was unoccupied was reasonable and credible was a question for the jury in considering the affirmative mistake of fact instruction. Reversal is required if appellant suffered harm as a result of the error. *Almanza v. State,* 686 S.W.2d 157 (Tex.Crim.App.1984). We therefore remand the case to the Court of Appeals for further proceedings consistent with *Almanza.*

McCORMICK, P.J., concurs in the result.

KELLER, J., concurs with note.

KELLER, J., concurs with the following note:

I think that there could be extreme situations in which a defendant's mistaken belief was unreasonable as a matter of law. But such situations would appear to be so rare that trial judges should routinely leave that determination to the jury. This case does not present one of those extreme situations.

I concur in the Court's judgment.