# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00802-CR

**Shelley Schnitzer Johnson, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT
### NO. CR-02-011, HONORABLE CHARLES SHERRILL, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found Shelley Schnitzer Johnson guilty of aggravated assault, for which the district court assessed a sentence of three years' confinement in the Institutional Division of the Texas Department of Criminal Justice. *See* Tex. Penal Code Ann. § 22.02(a)(2) (West Supp. 2006). In five issues, Johnson contends that the district court erred by refusing her requests that the jury charge include instructions regarding when a party may justifiably use force, deadly force, or threats of force to defend her property as well as an instruction on the defense of mistake of fact. In her sixth issue, she argues that the evidence presented at trial was sufficient to prove her affirmative defenses and that, consequently, she must be acquitted of the underlying charges. Because the record contains no evidence supporting Johnson's contentions that she was entitled to the requested instructions and because the record contains insufficient evidence to support any of the alleged defenses, we affirm the conviction.

## BACKGROUND

In 2000, Johnson purchased a tract of land in Hays County. Running behind Johnson's and the adjacent landowners' properties is a strip of land known as the Morton Reserve. At closing, Johnson was informed that the rear of her property was marked by a dry-stacked stone wall. In addition, Johnson was told that the seller of her land had been required to build a fence around the entire perimeter of the property. The recently erected fence ran up to and along the stone wall. After being shown a survey of the subdivision in which her lot was located, Johnson asked if the portion of the Morton Reserve running behind her lot was included with the land she was purchasing. The title company's closing officer stated that it was included but that it was subject to an easement prohibiting her from building on it.[1]

Frank Rolfe owned a lot adjacent to Johnson's property. In August 2001, Rolfe purchased the portion of the Morton Reserve running behind his and Johnson's properties.[2] At that time, the fence surrounding Johnson's property ran across and partially encompassed the reserve land Rolfe purchased. In October, Rolfe told Johnson that he planned on fencing off his newly acquired property and asked her to remove her fence from his property. He also stated that Johnson could have the fencing materials if she moved the fence; otherwise, he would move the fence himself. Rolfe testified that Johnson asked if she could buy the reserve land but he declined her offer.

---

[1] We note that the record does not include a deed indicating that Johnson's land included any portion of the Morton Reserve.

[2] Rolfe received a deed reflecting his purchase of the portion of the Morton Reserve in October 2001 and filed it with the county clerk in November 2001.

According to Rolfe, Johnson also mentioned suing her title company. Ultimately, Johnson did not move her fence.

Rolfe waited until early 2002 to begin putting in his fence. On February 9, he cut a section of Johnson's fence located near the stone wall and moved it so that he could access his property from the reserve. Rolfe asserted that he did not move Johnson's entire fence because he did not want any of her livestock to escape. On February 11, Johnson called the police and reported that her fence had been cut and that the stone wall had been knocked down. However, after determining that the incident involved a boundary dispute and that it was unclear who actually owned the fence, the police advised Johnson to seek a civil remedy.

On February 16, Rolfe and his friend David Baumgartner were walking around the perimeter of Rolfe's property. As they approached the reserve land they observed a woman kneeling near the stone wall. Rolfe and Baumgartner each testified that they did not know who the woman was and that they initially thought she was Baumgartner's girlfriend, who had been with them earlier in the day. They quickly discovered, however, that the woman was actually Johnson and that she was in the process of stacking stones in a gap in the wall. Rolfe testified that Johnson was holding a pistol and as they approached she announced, "Hold it right there." Rolfe stated further that as soon as he and Baumgartner stopped, she holstered her pistol and picked up a rifle that she then pointed at them. Rolfe also claimed that he and Baumgartner had not yet entered the reserve land when Johnson told them to stop and that they never entered the reserve at any point during the incident. Baumgartner agreed that they had not yet reached the reserve land and maintained that they were approximately 30 feet away from Johnson when she confronted them. Rolfe and Baumgartner

both insisted that prior to the incident they had been walking slowly, that they did not approach Johnson in an aggressive manner, and that neither of them made any threats towards Johnson.

Rolfe testified that after they stopped, Johnson announced that she had filed a suit against Rolfe and that she had obtained a restraining order.[3] Rolfe claimed that he then asked Johnson if she was "willing to kill [him] over this piece of property," and that she responded that she would "do anything she has to do to keep [Rolfe] off" the property. Rolfe and Baumgartner then turned and slowly retreated. After returning home, Rolfe reported the incident to the police. When the police arrived, they found Johnson still stacking stones; her pistol was holstered and the rifle was leaning against the wall. The police arrested Johnson, and she was charged with aggravated assault.

Johnson's case went to trial in July 2004. During the guilt-innocence phase of the trial, Johnson's attorney argued that her actions were justified based on her belief that she owned the reserve land where the incident occurred and because of the recent cutting of her fence and knocking down of the wall. Defense counsel contended that Johnson's reaction was reasonable because of the remote location and the "familiar" manner in which Rolfe and Baumgartner approached her. Johnson did not testify. The only defense witness was Bill Damron,[4] who testified as to what Johnson was told by the title company's representative at closing. During the charge conference, Johnson argued that she was entitled to jury instructions on the justifiable use of force, deadly force,

---

[3] The record contains no evidence establishing that Johnson had either sued Rolfe or obtained a restraining order against him before she confronted him on February 16, 2002.

[4] Bill Damron was Johnson's real estate agent who brokered the purchase of her land. He was present at the closing.

and threats of force to protect property and an instruction on the defense of mistake of fact. The district court denied Johnson's request, and the jury found Johnson guilty. This appeal followed.

## DISCUSSION

**Justifiable use of force**

In her first three issues, Johnson argues that the district court erred by refusing a jury charge instruction on her rights to (1) use deadly force or create the apprehension of deadly force in order to protect her property, (2) threaten to use deadly force in self-defense or in defense of her property, and (3) use non-deadly force to protect her property. We disagree.

An accused is entitled to an instruction on any defensive issue raised by the evidence, whether that evidence is weak or strong, unimpeached or contradicted, and regardless of what the trial court may think about the credibility of the evidence. *Granger v. State*, 3 S.W.3d 36, 38 (Tex. Crim. App. 1999); *Hudson v. State*, 145 S.W.3d 323, 324–25 (Tex. App.—Fort Worth 2004, pet. ref'd). However, when the evidence fails to raise a defensive issue, the trial court commits no error in refusing a requested instruction. *Muniz v. State*, 851 S.W.2d 238, 254 (Tex. Crim. App. 1993); *Hudson*, 145 S.W.3d at 325.

Section 9.41 of the penal code provides:

(a)  A person in lawful possession of land . . . is justified in using force against another when and to the degree the actor reasonably believes the force is *immediately necessary* to prevent or terminate the other's trespass on the land or unlawful interference with the property.

(b)  A person unlawfully dispossessed of land . . . is justified in using force against the other when and to the degree the actor reasonably believes the force is *immediately necessary* to reenter the land . . . if the actor uses the force *immediately or in fresh pursuit* after the dispossession and;

5

(1) the actor reasonably believes the other had no claim of right when he dispossessed the actor; or

(2) the other accomplished the dispossession by using force, threat, or fraud against the actor.

Tex. Penal Code Ann. § 9.41 (West 2003) (emphasis added). Section 9.42 of the penal code provides:

A person is justified in using deadly force against another to protect land . . . :

(1) if he would be justified in using force against the other under Section 9.41; and

(2) when and to the degree he reasonably believes the deadly force is *immediately necessary*:

(A) to prevent the other's imminent commission of arson, burglary, robbery, aggravated robbery, theft during the nighttime, or criminal mischief during the nighttime; or

(B) to prevent the other who is fleeing immediately after committing burglary, robbery, aggravated robbery, or theft during the nighttime from escaping with the property; and

(3) he reasonably believes that:

(A) the land . . . cannot be protected or recovered by any other means; or

(B) the use of force other than deadly force to protect or recover the land . . . would expose the actor or another to a substantial risk of death or serious bodily injury.

*Id.* § 9.42 (West 2003) (emphasis added). The threat of force is justified if the use of force would have been justified. *Id.* § 9.04 (West 2003). Finally, a person is justified in using force against another when and to the degree she reasonably believes the force is *immediately necessary* to protect herself against the other's use or attempted use of unlawful force. *Id.* § 9.31(a) (West 2003).

6

In order to determine if the district court erred, we must first ascertain whether Johnson was entitled to an instruction on the use of force to defend her property or herself. No evidence was introduced at trial to show that Rolfe was trespassing on or unlawfully interfering with any land that Johnson either lawfully possessed or believed she lawfully possessed when she threatened Rolfe. Rolfe's and Baumgartner's uncontradicted testimony establishes that they were on Rolfe's property and that they never entered the reserve land. Nor was there evidence suggesting that they threatened Johnson, made any aggressive movement towards her, or were carrying weapons or any other instruments that could be used to damage her property. Neither Rolfe nor Baumgartner was preventing Johnson from entering her land. Therefore, there was no evidence presented from which Johnson could have formed a *reasonable* belief that the use of force was *immediately necessary* to defend herself or her land. *See* Tex. Penal Code Ann. §§ 9.31, .41; *see also Hudson*, 145 S.W.3d at 325 ("When there is no evidence of a belief that force is needed to defend property, a criminal defendant is not entitled to a jury instruction on defense of property.").

Because there was no evidence demonstrating that Johnson would have been justified in using force to defend either herself or her property, the district court did not err by denying instructions on the justifiable uses of force, deadly force, or threats of force. *See* Tex. Penal Code Ann. §§ 9.04, .31(a), .41, .42(1). We overrule Johnson's first three issues.

**Mistake of Fact**

In issues four and five, Johnson argues that at the time of the incident she had a reasonable belief, although mistaken, that she owned the land where she was working and that,

7

consequently, she was entitled to jury instructions on the use of deadly force in defense of property and on mistake of fact.

Johnson contends that because she had a reasonable belief that she owned the land, she had a right to defend it with force if necessary. A "reasonable belief" is one that would be held by an ordinary and prudent person in the same circumstances as the actor. *Id*. § 1.07(a)(42) (West Supp. 2006). Based on the lack of evidence presented at trial, it is questionable whether it would have been reasonable for Johnson to believe that she owned the land when she confronted Rolfe and Baumgartner. Rolfe testified that he told Johnson in October 2001 that he had purchased the reserve land and that he planned to move the fence if she failed to do so. Rolfe received a special warranty deed in October and filed it with it the county clerk on November 6. Rolfe also testified that Johnson offered to purchase the land after he told her that he planned on moving the fence. It is unlikely that an ordinary and prudent person would offer to purchase a piece of land that she believed she already owned. Moreover, Johnson presented no evidence to establish that she actually believed she owned the land at the time of the incident. Johnson did not testify that she held such a belief. Bill Damron testified that Johnson was told by her title company's closing agent that the reserve land was included with her purchase. However, Damron's testimony only demonstrates that it would have been reasonable for Johnson to believe she owned the reserve land in December 2000; it does not establish that such a belief was still reasonable in February 2002.

Even if Johnson did reasonably believe that she owned the land, that fact alone cannot justify the use of deadly force as a matter of law. *See id*. § 9.42(1). Lawful possession of a piece of property is only one factor in determining whether Johnson would have been justified in using deadly

8

force to defend what she believed to be her property. *See id*. §§ 9.41(a), .42(1). In order for any use of force to have been justified, Johnson must have also reasonably believed that the use of force was *immediately necessary* to prevent or terminate Rolfe's trespass on the land or unlawful interference with the property. *See id*. § 9.41(a). As we discussed earlier, the record contains no evidence indicating that any force was immediately necessary to prevent Rolfe from trespassing on the land or from unlawfully interfering with the land. Therefore, despite any belief Johnson may have held as to the ownership of the land, reasonable or otherwise, she was not entitled to a jury instruction on the use of force or deadly force to defend what she may have believed was her land. *Muniz*, 851 S.W.2d at 254 (if evidence fails to raise defensive issue, then trial court commits no error in refusing requested instruction).

In addition, Johnson was not entitled to a jury instruction on the defense of mistake of fact. "It is a defense to prosecution that the actor through mistake formed a reasonable belief about a matter of fact if his mistaken belief negated the kind of culpability required for commission of the offense." Tex. Penal Code Ann. § 8.02(a) (West 2003). The statutory term "kind of culpability" means "culpable mental state." *Posey v. State*, 966 S.W.2d 57, 70 (Tex. Crim. App. 1998). Thus, Johnson was entitled to an instruction on the defense of mistake of fact if her mistaken belief that she owned the reserve land where she was working negated the culpable mental state required to commit assault.

For Johnson to have committed aggravated assault, she must have intentionally or knowingly threatened Rolfe with imminent bodily injury and have exhibited a deadly weapon.[5] *See* Tex. Penal Code Ann. § 22.01(a)(2) (West Supp. 2006). It is undisputed that Johnson intentionally

---

[5] Under the penal code, a firearm is considered to be a deadly weapon. Tex. Penal Code Ann. § 1.07(a)(17)(A) (West Supp. 2006).

or knowingly threatened Rolfe with two loaded firearms. However, Johnson insists that she should not have been held criminally responsible because her actions were justified. Although under certain circumstances evidence of Johnson's mistaken belief that she owned the reserve land may have supported a finding that her otherwise criminal actions were justified, it would not raise the defense of mistake of fact because such evidence would not negate the fact that Johnson possessed the mental state required to commit aggravated assault. *See id*. § 8.02(a). Therefore, the district court did not err by refusing Johnson's request for a jury instruction on the defense. We overrule Johnson's fourth and fifth issues.

**Factual Sufficiency**

In issue six, Johnson contends that the evidence presented at trial was sufficient to prove an affirmative defense. Specifically, Johnson claims:

> It is arguable that the Appellant should not have been charged at all, and it is clear that any number of affirmative defenses should have been included in the jury charge in this case. In order to preclude a miscarriage of justice of the highest order, the Appellant respectfully asks the court to review the factual sufficiency of the evidence for an instruction on an affirmative defense and asks that the Appellant be acquitted on those grounds.

We have already held that the record contains no evidence supporting Johnson's entitlement to a jury instruction on any of the alleged affirmative defenses. Evidence that is insufficient to support a party's right to a jury instruction on an affirmative defense cannot prove an affirmative defense as a matter of law. *Compare Granger*, 3 S.W.3d at 38 (providing that accused is entitled to instruction on any defensive issue raised by evidence, whether evidence is weak or strong, unimpeached or contradicted, and regardless of what the trial court may think about the credibility of the evidence), *with* Tex. Penal Code Ann. § 2.04(d) (West 2003) ("If the issue of the existence of an affirmative

10

defense is submitted to the jury, the court shall charge that the defendant must prove the affirmative defense by a preponderance of evidence.").  We overrule Johnson's sixth issue.

**CONCLUSION**

Because we hold that the district court did not err by denying the requested instructions and because the record contains insufficient evidence to establish any of the alleged defenses, we affirm the conviction.

 

_____

Bea Ann Smith, Justice

Before Justices B. A. Smith, Pemberton and Waldrop

Affirmed

Filed:   December 8, 2006

Do Not Publish

11