*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*

★ ★ ★ ★ ★ ★

**MEMORANDUM OPINION**

No. 04-08-00024-CR

Christy Jeanette **MEDRANO**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 2, Guadalupe County, Texas
Trial Court No. CCL-06-1851
Honorable Frank Follis, Judge Presiding

Opinion by:   Karen Angelini, Justice

Sitting:      Karen Angelini, Justice
              Rebecca Simmons, Justice
              Steven C. Hilbig, Justice

Delivered and Filed:  October 8, 2008

REVERSED AND REMANDED

Christy Jeanette Medrano appeals her conviction for misdemeanor assault. In one issue on appeal, Medrano contends that the trial court erred in denying her request to include a jury instruction on defense of property and that such error was harmful. Because we agree that the trial court erred in denying Medrano's request for a jury instruction and because we hold that such error was harmful, we reverse and remand for a new trial.

**FACTUAL AND PROCEDURAL BACKGOUND**

In June 2006, Medrano and Cynthia Chaney Hazelwood, the complainant, were neighbors. At trial, Hazelwood testified that on the day of the incident, June 5, 2006, she suspected Medrano's children had been in her backyard, had rearranged her patio furniture, and had taken a bag of fertilizer with them. Acting on her suspicions, Hazelwood went to Medrano's house where she saw the fertilizer in Medrano's back yard. Hazelwood then knocked on Medrano's door. According to Hazelwood, she and Medrano had always been cordial with one another. However, Hazelwood testified that on the day of the incident, Medrano came to her door inebriated. Although Medrano was five months pregnant at the time, Hazelwood had no idea Medrano was pregnant. Hazelwood told Medrano that Medrano's kids had been in her back yard and that "they tried to make a pipe bomb out of the potting soil with the firecrackers." According to Hazelwood, Medrano replied, "Get out of [my] f------ yard you old b----." Medrano then scratched Hazelwood's face with her fingers, and Hazelwood had to hold Medrano away from her by holding Medrano's hair.

During the altercation, Hazelwood's sunglasses that she had been wearing were broken and left inside Medrano's house. The altercation occurred right inside Medrano's house with the front door closed and ended when Medrano's brother and daughter told Hazelwood to leave. Hazelwood then reported the incident to the police. Hazelwood was treated for her injuries, including a scratched eyeball, a black eye, and numbness on one side of her face.

According to Medrano, on the day of the incident, she was asleep on the couch because she was pregnant and feeling sick. She testified that she was not inebriated. She heard loud banging on the door, and when she opened it, Hazelwood was there and began to yell and scream at Medrano about Medrano's kids. Medrano testified that after telling Hazelwood to leave her property, she tried

to shut the door. Hazelwood then pushed the door open, came inside, and attacked her. Medrano testified, "I defended myself. She was inside my house. She pushed her way inside my house." According to Medrano, Hazelwood hit her first on her head, and then scratched her, pulled her hair, and punched her.

Officer Byron Shane Burkhart was called to the scene to investigate. He first met with Hazelwood, who was bleeding from the bridge of her nose area. Hazelwood reported that she had been assaulted by her neighbor. Officer Burkhart then went to interview Medrano, who told him she was in her home when she heard someone banging on the front door. When Medrano opened it, Hazelwood started yelling at her about her children. Officer Burkhart testified that Medrano also appeared to have been assaulted, having injuries to her chin and a fingernail gouge in her shoulder.

## INSTRUCTION ON DEFENSIVE ISSUES

A defendant is entitled to a jury instruction on any defensive issue raised by the evidence, whether that evidence is weak or strong, unimpeached or contradicted, and regardless of what the trial court may think about the credibility of the evidence. *Granger v. State*, 3 S.W.3d 36, 38 (Tex. Crim. App. 1999). If a defensive theory is raised by the evidence, and a timely and proper request to instruct the jury on the theory is made, the trial court must instruct the jury on the raised defensive theory. *Booth v. State*, 679 S.W.2d 498, 500 (Tex. Crim. App. 1984).

If the trial court errs in refusing a defensive instruction, and error was preserved at trial, the defendant must show on appeal "some harm" from the error. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). In determining the existence of some harm, we examine "the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel, and any other relevant information revealed by the record of the trial as a

whole." *Ovalle v. State*, 13 S.W.3d 774, 789 (Tex. Crim. App. 2000) (quoting *Almanza*, 686 S.W.2d at 171).

The self-defense section of the Texas Penal Code provides that "a person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." TEX. PENAL CODE ANN. § 9.31(a) (Vernon Supp. 2008). And, the protection of property section of the Texas Penal Code provides that "[a] person in lawful possession of land or tangible, movable property is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to prevent or terminate the other's trespass on the land or unlawful interference with the property." *Id.* § 9.41(a) (Vernon 2003).

## DISCUSSION

In the case herein, Medrano requested instructions on both self-defense and protection of property. The trial court granted the instruction on self-defense, but denied the protection of property instruction. On appeal, the State concedes it was error for the trial court to refuse to instruct the jury on defense of property. Nevertheless, the State argues that the error was harmless. It is the State's contention, unaccompanied by any citation to authority, that "[t]he self-defense instruction encompasses the defense of property instruction in that it instructed the jury to consider the defendant's repelling another's use of unlawful force." We disagree that the error was harmless.

There can be no doubt that, in addition to self-defense, the defense of property instruction was raised by the evidence. Medrano testified not only that Hazelwood hit her and that she defended herself from Hazelwood, but also that Hazelwood pushed her way into Medrano's house. Further, Medrano testified that she told Hazelwood to leave the property and tried to close the door. Thus,

not only was the self-defense instruction warranted in that there was evidence that Medrano reasonably believed it necessary to protect herself against Hazelwood and that Medrano was justified in using force against Hazelwood, but, beyond self-defense, there was also evidence that Medrano, being in lawful possession of property, was justified in using force against Hazelwood because she reasonably believed it immediately necessary to prevent or terminate Hazelwood's trespass on her land. Thus, Medrano was entitled to instructions on both self-defense and defense of property.

Although the State claims that the trial court's error in failing to instruct on defense of property was harmless because the jury considered self-defense, we note that, in this case, the issues raised by each defense require two very distinct considerations: one involves Medrano's use of force to defend herself against force, while the other involves Medrano's use of force to prevent or terminate a trespass. While the jury considered whether Medrano was justified in using force to defend herself, the jury was not allowed to consider whether Medrano was justified in using force to prevent or terminate Hazelwood from trespassing on Medrano's property. And, in reviewing the record, while there may have been some question as to who was the first aggressor, there is no question that Hazelwood was a trespasser whom Medrano had a right to remove from her land. Therefore, we cannot hold that the trial court's error was harmless.

We note that there are circumstances where courts have found harmless error because the self-defense instruction did, in fact, encompass another defense. *See Solis v. State*, No. 01-02-01069-CR, 2004 WL 584701, at *4-*5 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (holding that any error in denying defendant's request for an instruction on protection of a third person's property was harmless because even if the trial court had instructed the jury on both self-defense and protection of a third person's property, the jury could not have found a different justification for defendant's

use of deadly force); *McCullough v. State*, No. 05-00-01253-CR, 2001 WL 418976, at \*3 (Tex. App.—Dallas 2001, no pet.) (explaining that where defendant framed his defense in terms of defending both himself and a third person, any error in failing to charge the jury on defense of third person was harmless). As stated above, however, self-defense and defense of property in this case present two entirely different matters for the jury to consider. We, therefore, hold that the trial court erred in refusing the defense of property instruction and that such error was harmful.

### CONCLUSION

Because the trial court's failure to instruct the jury on defense of property was harmful, we reverse the trial court's judgment and remand the cause for a new trial.

Karen Angelini, Justice

Do not publish