# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-09-00175-CR

**Michael Joseph Kipp, Appellant**

**v.**

**The State of Texas, Appellee**

FROM THE DISTRICT COURT OF BELL COUNTY, 426TH JUDICIAL DISTRICT
NO. 63,177, HONORABLE FANCY H. JEZEK, JUDGE PRESIDING

## MEMORANDUM OPINION

A jury found appellant Michael Joseph Kipp guilty of the offense of aggravated assault with a deadly weapon and assessed punishment at seven years' imprisonment. *See* Tex. Penal Code Ann. § 22.02 (West Supp. 2008). On appeal, Kipp argues that the trial court erred in refusing his request to include a self-defense instruction in the jury charge. Because we hold that the trial court did not err in failing to include a self-defense instruction, we affirm the judgment of conviction.

## BACKGROUND

The events giving rise to the instant prosecution took place on May 21, 2008. On that date, Kipp informed his girlfriend, Nicole Kiefer, that he disapproved of her spending time with her ex-boyfriend, Scott McQuagge. Kiefer then sent McQuagge a text message stating that she could no longer see or talk to him. Upon receiving this message, McQuagge drove to Kiefer's home,

where he found Kiefer and Kipp sitting outside in Kipp's car. Kipp testified that as he exited his vehicle to speak to McQuagge, he retrieved a metal pipe from his vehicle for the purpose of protecting himself.[1] McQuagge and Kipp began arguing loudly in the street, leading Kiefer's mother to come out of the house and announce that she had called the police. McQuagge then sat down on the hood of Kipp's car to wait for the police and refused to move, despite Kipp's repeated requests that he do so. At trial, each side presented significantly different versions of the events that followed McQuagge's refusal to move from the hood of the car.

The State primarily relied on the testimony of David Smith, a nurse who happened to be driving through the neighborhood at the time of the argument between McQuagge and Kipp. Smith testified that as he drove by the two men, their facial expressions and body language led him to believe that the argument was on the verge of turning physical. Smith then turned his car around and parked on the street a few houses down "to see if everything was going to be all right." Smith testified that he saw McQuagge sit on Kipp's car with his arms folded across his chest, and that Kipp initially walked away from the car and out of Smith's line of sight, but then returned into view holding a pipe in his right hand. Smith described the pipe as being two to two and a half feet long and "as big around as a golf ball." According to Smith, Kipp then "raised the pipe up above his head and to the right and swung it across him towards the left." Smith explained that he did not see the pipe actually strike McQuagge because Kipp was blocking his view, but that, after Kipp swung the pipe, McQuagge "rolled off the side of [the] car kind of down on to the driveway." Smith further

---

[1] In her testimony, Kiefer described the pipe as a "pullup pipe," meant for use as exercise equipment.

2

testified that even with Kipp blocking his view, he could see enough of McQuagge to verify that his arms were still crossed when Kipp swung the pipe in his direction. Smith also stated that "there was no time in between when the pipe was swung that [McQuagge] rolled off the side of the car." After McQuagge fell to the ground, Smith got out of his vehicle and began to administer medical care to McQuagge.

Kiefer also testified that she witnessed Kipp hit McQuagge with the pipe, and that McQuagge then "fell down like a tree." This testimony was consistent with the written statement she provided to police officers at the scene of the assault, but was inconsistent with a second written statement she provided to police at the request of Kipp's mother, in which she claimed not to have seen Kipp hit McQuagge with the pipe. Kiefer testified that pressure from Kipp and his mother led her to provide the second written statement and falsely claim that she did not see Kipp use the pipe. Kipp conceded in his testimony that before Kiefer prepared her second written statement, he told her, "I need you to say I didn't hit him with the pipe."[2]

McQuagge testified that he did not know whether Kipp hit him with his fist or the pipe because the last thing he remembered about the incident was sitting on Kipp's car with his arms crossed and looking in the direction of the house, away from Kipp. According to McQuagge, the next thing he knew, he was waking up in the hospital. McQuagge did testify that he never attempted to hit Kipp at any time.

Kipp denied hitting McQuagge with the pipe, but testified that while McQuagge was sitting on the car, "I saw a quick movement in his hands and not wanting to get hit myself, I punched

---

[2] Kipp took the position at trial that by making this statement, he was simply telling Kiefer that she needed to tell the truth.

him in the mouth." McQuagge then "went limp and fell face-first on the ground." Kipp further testified that while he did hold the pipe in his left hand throughout the argument, he used his right hand to punch McQuagge and never raised the pipe above his waist.[3] Kipp conceded at trial that McQuagge never hit him, that he never saw McQuagge with a weapon, and that the pipe he retrieved from his vehicle was capable of causing death or serious bodily injury. On cross-examination, Kipp described the "quick movement" in McQuagge's hands as the beginning of a swing, stating that McQuagge made a fist and raised his hand about six inches before Kipp punched him.

As a result of the assault, McQuagge suffered a scalp laceration, sinus injuries, and severe facial fractures involving bones in his nose, jaw, cheek, and eye socket. McQuagge had his jaw wired shut for several weeks and underwent facial reconstruction surgery that required four titanium plates to be permanently implanted in his face. McQuagge also testified that he continues to suffer from dizzy spells as a result of the injuries he sustained. McQuagge's treating surgeon, Dr. Lance Read, testified that if he had not surgically repaired McQuagge's facial injuries, McQuagge would have suffered the loss of function of his jaw and would be unable to chew correctly. When asked his opinion on whether a pipe was the cause of McQuagge's injuries, Read responded, "I would say that a weapon was used for blunt force[] trauma to cause these injuries." Read further confirmed that the injuries appeared to be consistent with use of the pipe that Kipp removed from his vehicle prior to the altercation with McQuagge. On cross-examination, Read

---

[3] Officer Michael Watts, the first Killeen police officer to arrive at the scene, testified that when he spoke to Kipp at the scene, Kipp told him "that he struck Mr. McQuagge in the head with his fist but he was holding the pipe in that hand when he struck him." This statement is inconsistent with Kipp's testimony that he was holding the pipe in his left hand when he punched McQuagge with his right hand. Kipp testified that Watts may have misunderstood his statement at the scene regarding which hand he used to hold the pipe.

testified, "It takes more than a fist to do that type—that severity of an injury." Read also explained that McQuagge had abrasions on the right side of his body, consistent with his falling to the ground after he was struck, and that the facial injuries were located on the left side of his body, so that the injuries to his face would not have been caused by the fall to the ground.

During the charge conference, defense counsel requested a self-defense instruction, which the trial court denied. The jury then found Kipp guilty of aggravated assault with a deadly weapon and assessed punishment at seven years' imprisonment. This appeal followed.

## STANDARD OF REVIEW

When we review any alleged charge error, we first determine whether error actually exists in the charge. *See Ovalle v. State*, 13 S.W.3d 774, 786 (Tex. Crim. App. 2000); *Mann v. State*, 964 S.W.2d 639, 641 (Tex. Crim. App. 1998). If we determine that the jury charge does contain error, we then determine whether any resulting harm requires reversal. *See Ovalle*, 13 S.W.3d at 786; *Mann*, 964 S.W.2d at 641. A defendant has a right to a jury instruction on any defensive issue that has been raised by the evidence, regardless of whether the evidence is weak or strong, unimpeachable or contradicted, and regardless of what the trial court may think of its credibility. *Ferrel v. State*, 55 S.W.3d 586, 591 (Tex. Crim. App. 2001); *Granger v. State*, 3 S.W.3d 36, 38 (Tex. Crim. App. 1999). This rule is designed to insure that the jury, not the trial court, will decide the relative credibility of the evidence. *Granger*, 3 S.W.3d at 38. In deciding whether a defensive theory is raised, the evidence is viewed in the light most favorable to the defense. *Id.* If the testimony or other evidence viewed in the light most favorable to the defendant does not establish self-defense, an instruction is not required. *Ferrel*, 55 S.W.3d at 591; *Granger*, 3 S.W.3d at 38.

5

**DISCUSSION**

In his sole point of error on appeal, Kipp argues that the trial court erred in refusing his request for a self-defense instruction in the jury charge because the defensive theory of self defense was raised by his testimony that McQuagge raised his fist six inches just before Kipp hit him.

Kipp claims that the State acknowledged during the charge conference that if Kipp's testimony is taken as true, then he acted in self defense. This claim represents a mischaracterization of the record. Prior to his request for a self-defense instruction, Kipp also requested the submission of the lesser-included offense of assault with bodily injury. In response to this request, the State argued that even taking as true Kipp's claim that he simply carried the pipe to protect himself but did not use it, he still exhibited a deadly weapon during the offense and therefore committed aggravated assault. *See* Tex. Penal Code Ann. § 22.02(a)(2) (person commits aggravated assault if he "uses *or exhibits* a deadly weapon during the commission of the assault") (emphasis added). In the context of this discussion, the State observed, "If we assume his testimony is true, he used it for self-defense purposes, if we assume that his testimony is true. If nothing else, he exhibited it." This statement, referencing the use-or-exhibition-of-a-deadly-weapon element of the offense of aggravated assault, is not an acknowledgment by the State that if Kipp's testimony is taken as true, it properly raises the defensive theory of self defense in this case. As we will address more fully below, Kipp's testimony that he removed the pipe from his vehicle with the intent to protect himself, even if true, does not necessarily entitle him to a self-defense instruction.

In reviewing Kipp's argument on appeal, we view the evidence in the light most favorable to the defense. *See Granger*, 3 S.W.3d at 38. Therefore, we must assume that the jury

6

could have believed Kipp's testimony that he did nothing but hit McQuagge with his fist after McQuagge made a movement as if to swing at him. The court of criminal appeals has held that a defendant who indisputably causes serious bodily injury to a victim has "by definition used deadly force." *Ferrel v. State*, 55 S.W.3d 586, 592 (Tex. Crim. App. 2001). Serious bodily injury is defined in the penal code as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." Tex. Penal Code Ann. § 1.07(a)(46) (West Supp. 2008). The evidence presented at trial established that McQuagge suffered serious bodily injury as a result of the assault, given Dr. Read's uncontroverted testimony that if he had not performed surgery on McQuagge's facial injuries, McQuagge would have suffered protracted loss or impairment of the function of his jaw. *See Brown v. State*, 605 S.W.2d 572, 575 (Tex. Crim. App. 1980) (holding that for purposes of establishing serious bodily injury, "[t]he relevant issue was the disfiguring and impairing quality of the bodily injury as it was inflicted, not after the effects had been ameliorated or exacerbated by other actions such as medical treatment"). On cross-examination, Kipp conceded that McQuagge suffered "very serious injuries," and when asked, "[I]f you had not hit Scott McQuagge, he would not have suffered these injuries; is that true?" he responded affirmatively.

On that basis, even viewing the evidence in the light most favorable to the defense, we conclude that Kipp, regardless of whether he used the pipe or his fist to strike McQuagge, employed deadly force "by definition" when he caused McQuagge serious bodily injury. *Ferrel*, 55 S.W.3d at 592; *see also Landrian v. State*, No. 01-05-00697-CR, 2009 Tex. App. LEXIS 3902, at *47 (Tex. App.—Houston [1st Dist.] May 29, 2009, no pet.) (mem. op., not designated for publication) ("[W]e must look at the end result of the act and, if the facts are such that the

7

complainant suffered serious bodily injury or death, then, by definition, the force used was deadly, and an instruction under section 9.31 is not applicable to the case.").[4]

Where a defendant has used deadly force, the trial court does not err in refusing to give a self-defense instruction unless the evidence raises the issue that deadly force was justified. *See* Tex. Penal Code Ann. § 9.32(a)(2)(A) (West Supp. 2008) (actor is justified in using deadly force "when and to the degree the actor reasonably believes the deadly force is immediately necessary . . . to protect the actor against the other's use or attempted use of unlawful deadly force"); *Werner v. State*, 711 S.W.2d 639, 644 (Tex. Crim. App. 1986) (jury instruction under 9.32 is not available in absence of evidence that deadly force was used or attempted by victim). Kipp presented no evidence that McQuagge used or attempted to use unlawful deadly force against him, and in fact testified that he did not believe his life was in danger at any time during the altercation, or else he would have struck McQuagge with the pipe. By Kipp's own admission, he did not reasonably believe that he needed to protect himself from McQuagge's use or attempted use of deadly force. As a result, the evidence does not raise an issue that Kipp was justified in employing deadly force against McQuagge. *See* Tex. Penal Code Ann. § 9.32(a)(2)(A).

---

[4] An instruction under section 9.31 of the penal code covers the justifiable use of non-deadly force, while section 9.32 covers the justifiable use of deadly force. *See* Tex. Penal Code Ann. §§ 9.31-32 (West Supp. 2008). While only section 9.31 is titled, "Self-Defense," instructions under either code section can be referred to as self-defense instructions. *See Carmen v. State*, 276 S.W.3d 538, 542 (Tex. App.—Houston [1st. Dist.] 2008, no pet.) ("[T]he shorthand term 'self-defense' is usually all that is needed to convey that the defendant is asserting the defense of one's self, either with deadly force when complainant died or suffered serious bodily injury, or without deadly force when no death or serious bodily injury occurred.").

Viewing the evidence in the light most favorable to the defense, we conclude that the issue of self defense is not raised by the evidence. As a result, we hold that Kipp was not entitled to a self-defense instruction and the trial court did not err in refusing to provide one. We overrule Kipp's issue on appeal.

## CONCLUSION

We affirm the judgment of conviction.

_____

Diane M. Henson, Justice

Before Chief Justice Jones, Justices Waldrop and Henson

Affirmed

Filed: October 9, 2009

Do Not Publish

9