**Opinion filed July 21, 2011**



In The

# Eleventh Court of Appeals

_____

## No. 11-10-00211-CR
_____

### JOSE EDUARDO VILLARREAL, Appellant

### V.

### STATE OF TEXAS, Appellee

**On Appeal from the 42nd District Court**

**Taylor County, Texas**

**Trial Court Cause No. 23385-A**

### M E M O R A N D U M   O P I N I O N

Jose Eduardo Villarreal appeals his conviction by a jury of the offense of aggravated sexual assault of an elderly individual by causing his male sex organ to penetrate the mouth of the victim and by using his tongue to penetrate the victim's sexual organ. The trial court assessed his punishment at fifty years in the Texas Department of Criminal Justice, Institutional Division. He asserts in a single issue that the trial court committed reversible error by denying him a requested instruction regarding the issue of insanity. We affirm.

An accused has the right to an instruction on any defensive issue raised by the evidence, whether that evidence is weak or strong, unimpeached or contradicted, and regardless of what the

trial court may or may not think about the credibility of the evidence. *Granger v. State*, 3 S.W.3d 36, 38 (Tex. Crim. App. 1999). The affirmative defense of insanity applies if, at the time of the conduct charged, the actor, as a result of severe mental disease or defect, did not know that his conduct was wrong. TEX. PENAL CODE ANN. § 8.01(a) (Vernon 2011).

In December 2008, Villarreal was found to be incompetent to stand trial and was committed to the North Texas State Hospital – Vernon Campus – for observation and treatment. On May 6, 2009, following a report that Villarreal was still incompetent, Villarreal was recommitted for further observation and treatment. Following a report submitted on January 15, 2010, indicating that Villarreal, while still suffering from mental illness, had regained the competency to stand trial, a jury found Villarreal competent to stand trial.

The victim testified that the assault occurred on April 23, 2008. Abel Coy, Villarreal's cousin, testified that he had known Villarreal since Villarreal was a child. He related that he was acquainted with him in the early half of 2008. He stated that Villarreal had been diagnosed as paranoid schizophrenic and was getting a disability check. When asked if his mental condition was such that "you" would actually not know whether his actions were right or wrong, Coy replied, "Yeah." He then indicated that Villarreal had said to him that angels had told him to murder his family. He related that, on Thanksgiving about three years previously, another cousin had banned Villarreal from his home because Villarreal had told him the angels were telling Villarreal to kill his family. He said it was more or less back in 2007 or 2008, around the time of the events that were being discussed. When asked if, during April 2008, these were the kinds of behaviors going on with Villarreal, Coy replied, "Sir, I have never had a normal conversation with my cousin, ever."

On cross-examination, Coy testified that he saw Villarreal walking in 2008 about twice a week and would sometimes give him a ride. He related an event at which he took Villarreal with him to the mall and left him briefly while he went into Sears to get a part for a washer. He related that he was approached by an off-duty police officer working as security who said that Villarreal had told a girl that her skirt was too short. He told Coy he wanted Villarreal out of the mall or he was going to call in the police to haul him off. When asked if this was the kind of behavior he observed Villarreal doing around April 2008, Coy replied, "Yes, sir. He's been like that a long time." While Coy stated that his cousin suffered from a severe mental disease or defect, and indicated that at some vague time Villarreal did not know if his actions were wrong,

he never offered an opinion as to whether, at the time of the offense, Villarreal was capable of knowing that his conduct was wrong.

Dr. John Crowley, an Abilene psychiatrist, testified that, in his opinion, Villarreal was legally sane at the time of the offense, having the mental capacity to understand that his actions were wrong if he sexually assaulted a woman.

When considered with facts and circumstances concerning an accused and the offense, lay opinion testimony may be sufficient to raise the defense of insanity. *Pacheco v. State*, 757 S.W.2d 729, 736 (Tex. Crim. App. 1988). However, the existence of a mental disease, alone, is not sufficient to establish legal insanity. *Nutter v. State*, 93 S.W.3d 130, 131-32 (Tex. App.— Houston [14th Dist.] 2001, no pet.). While Coy's testimony may have showed that Villarreal suffered from a severe mental disease or defect and that at some time he did not know if his conduct was wrong, it did not show that, at the time of the offense, he did not know that his conduct was wrong. Evidence presented by a lay witness who never undertakes to express a conclusion or opinion on insanity is not sufficient to raise the issue. *Pacheco*, 757 S.W.2d at 735. While Coy did express his opinion that Villarreal, as a result of a severe mental disease or defect, did not know when his actions were right or wrong, he was so vague as to what time frame his opinion applied as to prevent a reasonable juror from finding that Villarreal did not know at the time of the offense whether his conduct was right or wrong. We overrule Villarreal's sole issue on appeal.

The judgment is affirmed.


JOHN G. HILL
JUSTICE

July 21, 2011

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Hill, J.[1]

---

[1]John G. Hill, Former Justice, Court of Appeals, 2nd District of Texas at Fort Worth, sitting by assignment.