COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

§

JOSEPH COVARRUBIAS,                                      No. 08-08-00204-CR

§

Appellant,                                     Appeal from

§

v.                                                              394th District Court

§

THE STATE OF TEXAS,                              of Presidio County, Texas

§

Appellee.                                      (TC # 3023)

§

**O P I N I O N**

Joseph Covarrubias appeals his convictions of burglary of a habitation (Count I) and attempted murder (Count III). A jury found Appellant guilty of Counts I and III as alleged in the indictment. The trial court assessed Appellant's punishment at imprisonment for a term of ten years (Count I) and a term of fifteen years (Count III). The trial court included in the judgment an affirmative deadly weapon finding. We affirm.

**FACTUAL SUMMARY**

On the evening of June 29, 2007, Javier "Harvey" Cano got into a confrontation with Appellant's father, Tony Covarrubias, at a bar in Marfa and Tony hit him in the head with a cue stick. Appellant is Cano's son-in-law. Cano left the bar and went home sometime before midnight. Later that evening, Cano heard his doorbell ringing repeatedly so he went from his bedroom to the front door and looked outside. Even though the porch light was on, Cano could not see anyone through the glass storm door but the doorbell continued to ring. Cano opened the door and Tony, followed by Appellant, rushed into his home without his permission. Both men were cussing in Spanish at Cano and began hitting him. Cano saw that Appellant had a pistol. Cano ran back down

the hallway toward his living room but Appellant and Tony followed him. Cano grabbed onto Tony and tried to keep him between Appellant and himself so Appellant would not shoot him. As they struggled, Cano managed to grab Appellant's hand and the top part of the pistol with his left hand while he tried to defend himself with his right hand. During the struggle, Cano was yelling for his nephew who lived with him. At some point, Tony was able to get behind Cano and he struck him in the head with a heavy object several times. Cano flipped over a chair in the living room and fell onto the floor where both men began to beat him. Cano begged them to stop and not kill him, but one of them said, "[Y]eah, that's what we are here for." Appellant got on top of Cano and held the gun to his head while Tony stood on Cano's right arm and continued to beat him. Cano attempted to block the blows and the gun with his left hand. Appellant pulled the trigger, but the gun just clicked and did not fire. Appellant looked at Tony and said, "[I]t doesn't want to work." Tony told him to cock the gun again. Appellant cocked it again, held the gun to Cano's head and pulled the trigger three times. Still it did not fire. Appellant then hit Cano in the eye with the gun and a glass object. Appellant and Tony stopped beating him and left when Cano's nephew, Anthony Cano, began screaming hysterically that he had called the police. Anthony held Cano's hand while they waited for the police and the ambulance.

Anthony Cano was almost asleep when he heard a loud noise which sounded like the swinging gate in front of the house. Anthony heard the front door open and slam against the wall with a big thud. After hearing another thud and his uncle yelling for help, Anthony got out of bed. He was putting on his pants when he heard a second voice, whom he believed to be Appellant, saying, "You don't mess with my family." Anthony tried to call 911 but his phone was turned off and he had trouble turning it on. He searched for his uncle and found him on the floor as Appellant and a man with a ponytail stood over him. Anthony saw that one of them had a vase in his hand and

another had a gun. He believed it was Appellant who had the gun. Once he saw the gun, he knew he could not help his uncle. He ran back into his room, slammed the door, and locked it before calling 911. As he was trying to dial 911, Anthony began screaming over and over again that he had called the police and they were coming. He heard the door slam and they were gone. Anthony ran to his uncle and tried to help him while waiting for the police.

Officer James Davis of the Marfa Police Department and other officers arrived at Cano's home. Davis saw Cano on the floor motionless with blood all over his head. EMS arrived at about 12:25 a.m. and transported Cano to a hospital in Alpine. Davis found blood stains and spatters on the living room wall and on a large chair in the living room. Next to the chair and near the victim, Davis saw a glass decanter on the floor in a pool of blood. The decanter also had blood on it. In another pool of blood at the foot of the chair, Davis found a magazine from a .25 caliber handgun with six live rounds in it. Davis conducted a thorough search of the house and the yard to find the handgun but he couldn't locate it. Cano testified that he did not have a gun in the house. Police officers arrested Appellant and Tony the following morning.

Photographs taken of Cano at the hospital depict numerous abrasions and contusions on his scalp and face. He also had injuries to both hands and there were bruises on both of arms. Photographs taken of Appellant and Tony Covarrubias after their arrest do not reflect any injuries with the exception of small scrapes on Tony's elbows.

Appellant testified in his own defense. He had a good relationship with Cano at one time but the relationship had become strained since Appellant had married Cano's daughter. On the evening of June 29, 2007, Appellant's father came home at around 11:30 and told him he had been in an altercation at a bar with Cano. The pair went to Cano's house to talk to him "man-to-man." Appellant did not go to the house with the intention of fighting Cano. He denied having a gun

because he was a convicted felon and could not have one. He also said that his father didn't have a gun and they didn't pick one up on the way to Cano's house. Both of them stood in front of the door and Appellant pushed the doorbell several times because he was not sure that it was working. Cano opened the door and without warning grabbed Tony by the hair and pulled him into the house. The storm door closed behind them and Appellant stood outside. Concerned about his father, Appellant opened the door and went inside where he found his father on the floor. Cano was sitting on top of Tony, hitting him, and Tony's shirt was covered in blood. Appellant asked Cano several times to get off of his father but he just kept hitting him. When Appellant couldn't pull Cano off, he hit Cano on the nose and temple with his fist. Cano fell and Appellant was able to get his father to his feet and they left. Once they were back in their truck, Appellant saw that his father did not have any injuries except for a swollen elbow. Appellant did not see the wine decanter on the floor and he did not see a pistol.

A grand jury returned a three-count indictment. Count I alleged that Appellant committed burglary of a habitation and committed aggravated assault. Count I also included an allegation that Appellant used or exhibited a deadly weapon, a firearm. In Count II, the indictment alleged that Appellant committed aggravated assault with an object unknown to the grand jury. The third count alleged that Appellant committed attempted murder by placing a gun to the head of Javier Cano and pulling the trigger. The State abandoned Count II prior to trial. The jury rejected Appellant's defenses and found him guilty of Counts I and III.

## SUFFICIENCY OF THE EVIDENCE

In his first two issues, Appellant challenges the legal sufficiency of the evidence supporting his convictions of burglary of a habitation and attempted murder. Appellant has not raised a factual

sufficiency complaint.[1]

## Standards of Review

In reviewing the legal sufficiency of evidence, we consider all evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979). We must account for "the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007), *quoting Jackson*, 443 U.S. at 318-19, 99 S.Ct. 2781.

## Elements of Burglary of a Habitation

Count I of the indictment alleged that Appellant intentionally or knowingly entered the habitation of Javier Cano without the effective consent of Cano and committed aggravated assault. Section 30.02(a)(3) of the Texas Penal Code provides that a person commits an offense if, without the effective consent of the owner, the person enters a habitation and commits or attempts to commit a felony, theft, or an assault. TEX.PENAL CODE ANN. § 30.02(a)(3)(Vernon 2003). The application paragraph of the court's charge tracked the language of the indictment and Section 30.02(a)(3).

## Burglary Analysis

Appellant argues that the evidence is legally insufficient to prove beyond a reasonable doubt that he entered Cano's residence without his effective consent. He asserts that "[t]he strongest evidence indicated that the alleged victim allowed Appellant into his home and Appellant did not barge in." In reviewing the legal sufficiency of the evidence, we consider all of the evidence in the

---

[1] We have concluded that Appellant's brief raises only legal sufficiency complaints because he cites *Jackson v. Virginia* in support of his argument that the evidence is insufficient to support the verdict. Further, Appellant requests that each of his convictions be reversed and a judgment of acquittal entered.

light most favorable to the verdict and determine whether the jury could have found the essential elements of the offense beyond a reasonable doubt. Appellant's argument would require us to impermissibly re-weigh the evidence or discount evidence favorable to the verdict because there is contrary evidence. We will review the evidence for legal sufficiency using the correct standard.

Javier Cano testified that he opened his front door after hearing the doorbell ring repeatedly even thought it was near midnight and the person who was ringing the doorbell remained out of sight. When Cano opened the door, Appellant and his father, Tony Covarrubias rushed into his house and began assaulting him. Cano testified that he did not give them permission to enter his home. Based on this evidence, a rational trier of fact could reasonably find beyond a reasonable doubt that Appellant entered the habitation without Cano's effective consent. We overrule Issue One.

### Elements of Attempted Murder

Appellant also challenges the legal sufficiency of the evidence supporting his conviction of attempted murder. Count III of the indictment alleged that Appellant, acting with the specific intent to commit the offense of murder, attempted to cause the death of Javier Cano by placing a gun to his head and pulling the trigger. The application paragraph tracked the language of the indictment.

### Attempted Murder Analysis

Appellant argues that the evidence is legally insufficient to support his conviction of attempted murder because the police did not find a gun at the scene or in Appellant's possession, no forensic evidence was obtained from the .25 caliber magazine found on the floor, and Appellant denied having or using a gun during the confrontation with Cano. He also asserts that Cano's testimony should be viewed with suspicion. As was the case with Issue One, Appellant's arguments cannot be considered in the context of a legal sufficiency issue because he is not viewing the

evidence in the light most favorable to the verdict but is instead focusing on the credibility of the complainant and evidence contrary to the verdict. We will review the legal sufficiency of the evidence using the correct standard.

Javier Cano expressly testified that Appellant held a gun to Cano's head and pulled the trigger but the gun did not fire. Appellant looked at his father and said the gun did not want to work. His father instructed him to cock it again which Appellant did. He then pulled the trigger three more times. The gun still did not fire. Anthony Cano also testified that he saw Appellant holding a gun while standing over his uncle. The State is not required to produce the gun in order to obtain a conviction on the attempted murder count. It was the jury's task to weigh the evidence, address the conflicts in the evidence, and determine the credibility of the witnesses. The jury resolved these issues in favor of the State and against Appellant. We conclude the evidence is legally sufficient to prove that Appellant attempted to cause Cano's death by holding a firearm to his head and pulling the trigger. Issue Two is overruled.

## EXCLUSION OF REPUTATION EVIDENCE

In his third Issue, Appellant contends that the trial court abused its discretion by refusing to allow Alton "Rusty" Taylor testify as a reputation witness for the defense. Taylor testified outside of the jury's presence that he was formerly employed at the Presidio County Sheriff's Office as a deputy sheriff. Taylor was familiar with Cano's reputation within the community for truth and veracity and he testified that Cano had a bad reputation. During cross-examination, Taylor admitted that he was actually speaking about Cano's general reputation and that he had never heard anyone say that Cano was a liar, nor had Cano ever lied to him. He admitted that since he had not heard anyone talk about Cano's reputation for truthfulness, he could not testify about his reputation for that character trait. On re-direct examination, the following exchange occurred:

[Defense counsel]: Okay. And when you are testifying here, while there may be the general reputation within the community, is specifically his -- when we are talking about truth and voracity [sic], is his reputation within the community of Marfa, Texas, good or bad?

[Witness]: I couldn't give you an opinion on that specifically.

The State objected to the proffered testimony on the ground that Taylor was not qualified to offer an opinion on truthfulness or veracity because he was only familiar with Cano's general reputation. The trial court sustained the objection.

We review decisions to admit or exclude evidence under an abuse of discretion standard. *Shuffield v. State*, 189 S.W.3d 782, 793 (Tex.Crim.App. 2006). The trial court abuses its discretion only when the decision lies "outside the zone of reasonable disagreement ." *Walters v. State*, 247 S.W.3d 204, 217 (Tex.Crim.App. 2007). Pursuant to Rule 608(a) of the Texas Rules of Evidence, the credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness; and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise. TEX.R.EVID. 608(a). Thus, a witness's general character for truthfulness may be shown only through reputation or opinion testimony. TEX.R.EVID. 608; *Hammer v. State*, 296 S.W.3d 555 (Tex.Crim.App. 2009). A witness's general lack of credibility may be shown by demonstrating the witness has a poor reputation in the community for truth. *See Dixon v. State*, 2 S.W.3d 263, 272 (Tex.Crim.App. 1999)(op. on reh'g).

The witness denied being familiar with Cano's reputation in the community for truthfulness and admitted he had never heard anyone say that Cano was untruthful. Under these circumstances, the trial court did not abuse its discretion by excluding the testimony. Issue Three is overruled.

**DEFENSE OF ANOTHER**

In his final issue, Appellant asserts that the trial court erred by failing to instruct the jury regarding defense of another in connection with the attempted murder accusation.[2] A defendant is entitled to an instruction on any defensive issue raised by the evidence, whether that evidence is weak or strong, unimpeached or contradicted, and regardless of the trial court's opinion about the credibility of the defense. *Granger v. State*, 3 S.W.3d 36, 38 (Tex.Crim.App. 1999); *Hamel v. State*, 916 S.W.2d 491, 493 (Tex.Crim.App. 1996). This rule is designed to insure that the jury, not the trial court, will decide the relative credibility of the evidence. *Granger*, 3 S.W.3d at 38. A defendant need not testify in order to raise a defense. *VanBrackle v. State*, 179 S.W.3d 708, 712 (Tex.App.-- Austin 2005, no pet.). Defensive issues may be raised by the testimony of any witness. *Jackson v. State*, 110 S.W.3d 626, 631 (Tex.App.--Houston [14th Dist.] 2003, pet. ref'd). In deciding whether a defensive theory is raised, the evidence is viewed in the light most favorable to the defense. *Granger*, 3 S.W.3d at 38.

> Section 9.33 of the Texas Penal Code provides:
>
> A person is justified in using force or deadly force against another to protect a third person if:
>
>> (1) under the circumstances as the actor reasonably believes them to be, the actor would be justified under Section 9.31 or 9.32 in using force or deadly force to protect himself against the unlawful force or unlawful deadly force he reasonably believes to be threatening the third person he seeks to protect; and
>>
>> (2) the actor reasonably believes that his intervention is immediately necessary to protect the third person.

TEX.PENAL CODE ANN. § 9.33 (Vernon 2003). Application of Section 9.33 depends on the defendant's assessment of the circumstances at the time of the offense because it places the

---

[2] The court instructed the jury on defense of another in connection with Count I.

defendant "in the shoes of the third person." *Hughes v. State*, 719 S.W.2d 560, 564 (Tex.Crim.App. 1986).  If the defendant reasonably believes that the third person would be justified in using force to protect himself, then the defendant may exercise force on behalf of that third person.  *Id*.

Self-defense and other chapter nine defenses[3] justify conduct that would otherwise be criminal.  *VanBrackle*, 179 S.W.3d at 715.  In other words, the defendant must "admit" violating the statute under which he is being tried, then offer a statutory justification for his otherwise criminal conduct.  *Id.*, *citing Young v. State*, 991 S.W.2d 835, 838 (Tex.Crim.App. 1999).  Thus, a defendant is not entitled to a statutory justification defense if, through his own testimony or the testimony of others, he claims that he did not perform the assaultive acts alleged, or that he did not have the requisite culpable mental state, or both.  *See Ex parte Nailor*, 149 S.W.3d 125, 134 (Tex.Crim.App. 2004).

Appellant completely denied committing the conduct alleged in Count III of the indictment. He admitted striking Cano in the head with his fist to get him off of Tony, but he denied having a gun or holding a gun to the head of Cano and pulling the trigger.  Having denied committing the specific conduct alleged in Count III, Appellant was not entitled to an instruction on defense of another.  We overrule Issue Four and affirm the judgment of the trial court.


March 2, 2010

ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Rivera, JJ.

(Do Not Publish)

---

[3]  Chapter 9 of the Penal Code is entitled "Justification Excluding Criminal Responsibility."