Opinion issued June 10, 2010









     







In The
Court of Appeals
For The
First District of Texas




NO. 01–07–00487–CR




ADEDAYO TAIWO, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from County Criminal Court at Law No. 14
Harris County, Texas
Trial Court Cause No. 1057017




MEMORANDUM OPINION

          A jury convicted appellant, Adedayo Taiwo, of misdemeanor theft of property
valued at over $500 and less than $1,500.


 The trial court assessed punishment at 180
days’ confinement, suspended for two years of community supervision, with a $500
fine. Appellant’s conviction was affirmed on appeal, and petition for review was
refused. Taiwo v. State, No. 07-01-0417-CR, 2002 WL 511444, at *5 (Tex.
App.—Amarillo Apr. 4, 2002, pet. ref’d). After appellant satisfactorily served her
term of community supervision and was discharged, she applied for a post-conviction
writ of habeas corpus on the basis that she was denied effective assistance of counsel
at trial and on appeal. The trial court granted an out-of-time appeal. 
          In two issues, appellant contends that her counsel was ineffective at trial and
in her first appeal.
          We reverse and remand.
Background
          Appellant was employed as a sales associate at a Dillard’s department store in
Willowbrook Mall in Houston. Appellant’s supervisor was Helen Palmer, the sales
manager of the clothing area of the store. According to Palmer, the January 2001
inventory of the store revealed that $800,000 in merchandise was missing. To avoid
the risk of losing her job, it was Palmer’s responsibility to determine the source of any
losses in her department. According to Palmer, Dillard’s had determined that over
50 percent of inventory losses were attributable to pilferage by employees. Palmer
explained that Dillard’s has a policy that it will pay a $750 bonus to any associate
who reports another sales associate for stealing from Dillard’s. Palmer testified that
she had been suspecting that appellant might be involved in stealing from Dillard’s. 
          Just before closing time on Sunday, April 1, 2001, Palmer saw two women
with two children wandering around the store and carrying several expensive items
of clothing from various areas to appellant’s register in the casual department. There
were eight other sales associates on the floor in the clothing area at the time, and 
appellant was working her register alone. Palmer began to suspect that these two
women, who were never identified, fit certain classic patterns of shoplifter behavior. 
According to Palmer, other sales associates were also watching them.
          When Palmer saw the women bring a stack of clothing to appellant’s register,
Palmer walked over and perused the sales tags. She noted that there were about 20
items presented and that one of the blazers had a sales price of $240. Palmer watched
appellant ring up six of the items, and then, because appellant seemed nervous,
Palmer walked a few feet away and stood behind a display case to try to watch the
rest of the transaction. However, Palmer could not see appellant. According to
Palmer, she stepped away for “20 seconds.” According to appellant, Palmer was gone
for three to four minutes.
          When Palmer returned to appellant’s register, the two women had left and
Palmer asked appellant to show her the receipt. The receipt indicated that six items
had been purchased for a total of $245.86. According to Palmer, she asked if
appellant had totaled up all of the merchandise because she could not believe that
appellant could have finished the transaction so quickly, and appellant responded that
she might have made a mistake. According to appellant, the women only purchased
six items. Appellant looked around for the women, saw them about to board an
escalator, and chased after them. Palmer chased after appellant. Appellant caught up
with the women and asked to check their bags for “a possible mistake.” 
          Appellant testified that, when she checked out the two customers, they had
presented six items and that she had placed these six items into one bag. When
appellant saw the customers about to board the escalator, she noticed that they were
carrying two Dillard’s bags. According to Palmer, the women were carrying three
Dillard’s bags. Appellant had not seen the customers with other Dillard’s bags when
they were at the register. However, the women had children with them, and there
were other people in line at the register, so appellant had not studied the women very
closely. 
          Palmer asked to see the customers’ receipt. One of the women responded that
there were two receipts, and she began rummaging around in her purse. However,
she could locate only one receipt for six items, totaling $245.86. Appellant asked the
women to come back to the register, and they complied.
          Palmer testified that she called another manager, William Flinn, to assist in
comparing the receipt with the items in the bags and that she waited for Flinn to
arrive before she disturbed the merchandise contained in the bags. According to
Palmer, when she and Flinn dumped the bags out, the six items that were accounted
for on the receipt were there, however, there were 12 additional clothing items that
were not on the receipt. Palmer testified that it was unusual for the 12 items, which
included high-end designer dresses and blazers, to have been stuffed into the bags as
they were because customers normally will ask to have such items left on hangers. 
          Flinn testified that, when he arrived to meet with Palmer, the two customers
had three bags and that the merchandise was still in the bags. Flinn testified that he
did not physically compare the items with the receipt but that he “watched Palmer do
it.” Flinn also testified that the customers stated that they had another receipt.
          Appellant testified that Palmer had not waited for Flinn to arrive, but had
dumped the bags out onto a counter that already had numerous other pieces of
clothing laying on it that were waiting to be returned to store shelves from the
dressing rooms. Appellant recounted that it did not seem possible to dump the
clothing out without getting it mixed up with the other clothing already on the
counter. Appellant later testified, however, that she did not believe that the
merchandise from the bags had actually become commingled with the merchandise
on the counter. 
          Initially, the two customers appeared embarrassed and stated that they did not
know why they were being treated in such a manner because they had paid for
everything. Later, they became angry and demanded a refund. Palmer refunded
$245.86 and let the customers leave. Palmer did not ask the customers for
identification, did not ask them to stay, and did not call the police. The store’s
security guard was out for the day. After the store closed, Palmer called the police,
and appellant was arrested. 
          At trial, Palmer testified that she never saw appellant fail to ring anything up
and that the store did not have sensors on its clothing or security cameras. Palmer
also testified, without objection, that she believed that appellant gave the clothing to
the two women. Palmer said that the items of clothing were returned to the racks for
sale and that she later pulled the items back off of the racks and took photographs of
the items as evidence. The photographs were admitted at trial. Palmer testified that
the total value of the items not on the receipt was $1,400.97. Such testimony was the
sole evidence presented concerning the value of the items at issue. Appellant was
convicted of theft of property, namely, “three blazers, three shirts, two dresses, and
two pair of pants,” valued at over $500 and less than $1,500. 
Jurisdiction and Procedural Posture
          On May 17, 2001, the trial court signed the judgment of conviction and
assessed punishment at 180 days’ confinement, suspended for two years of
community supervision. On April 4, 2002, in her appeal from that judgment,
appellant contended that the evidence was factually insufficient to support her
conviction, that the trial court erred by denying her motion for continuance, and that
the trial court erred by failing to hold a hearing on her motion for new trial based on
newly discovered evidence. Appellant’s conviction was affirmed, and her petition
for review was refused by the Texas Court of Criminal Appeals. Taiwo, 2002 WL
511444, at *5. Subsequently, on October 31, 2004, appellant satisfactorily completed
her term of community supervision and was discharged. 
          On February 5, 2007, appellant applied for a post-conviction writ of habeas
corpus to challenge the trial court’s order imposing community supervision. Texas
Code of Criminal Procedure article 11.072 provides for an application for post-conviction writ of habeas corpus after the completion of a term of community
supervision. See Tex. Code Crim. Proc. Ann. art. 11.072, § 1 (Vernon 2005)
(providing that application is to be made to the trial court that imposed the term of
community supervision). Hence, the trial court had jurisdiction over appellant’s
application. See id. art. 11.072, §§ 1, 2; Arreola v. State, 207 S.W.3d 387, 390 (Tex.
App.—Houston [1st Dist.] 2006, no pet.). 
          In her application for habeas relief, appellant contended that she received
ineffective assistance of counsel at trial and requested a new trial. Specifically,
appellant contended that her counsel failed to request a mistake of fact instruction,
failed to object to certain prejudicial testimony, and failed to argue in closing that,
because the jury charge only authorized a conviction of appellant as the primary actor,
the jury was required to acquit appellant if it believed that appellant acted only to
assist others. In addition, appellant contended that she received ineffective assistance
of counsel on appeal and asked for an out-of-time appeal. Specifically, appellant
contended that there was “no evidence” to establish that appellant was guilty of theft
as the primary actor and that her counsel failed to challenge the legal sufficiency of
the evidence. In her prayer, appellant cumulatively requested “that the court issue a
writ of habeas corpus; conduct a hearing; and grant a new trial, or, in the alternative,
an out-of-time appeal.” 
          On March 16, 2007, the trial court granted an out-of-time appeal.


 See Ex parte
Oliver, No. WR-63080-01, 2006 WL 1413434, at *1 (Tex. Crim. App. 2006)
(recognizing that contention of ineffective assistance of counsel may form basis for
grant of out-of-time appeal); Sterling v. State, 681 S.W.2d 680, 682 (Tex.
App.—Houston [14th Dist.] 1984, pet. ref’d) (demonstrating that ineffective
assistance of counsel claim may provide basis for post-conviction habeas corpus
relief in form of out-of-time appeal); see also Ex parte Dietzman, 790 S.W.2d 305,
306 (Tex. Crim. App. 1990) (citing Evitts v. Lucey, 469 U.S. 387, 392, 105 S. Ct. 830,
834 (1985) (recognizing that appellant is entitled to effective assistance of counsel
on appeal)). The State did not appeal the trial court’s grant of appellant’s application
for writ of habeas corpus. See Tex. Code Crim. Proc. Ann. art. 11.072 § 8 (Vernon
2005) (authorizing State’s appeal from order granting, in or whole or in part, habeas
corpus relief under article 11.072).
          The effect of the trial court’s grant of an out-of-time appeal is that appellant
was returned to the position immediately after the trial court signed the judgment of
conviction, at which point she could give notice of appeal and, with aid of counsel,
obtain a meaningful appeal. See Mestas v. State, 214 S.W.3d 1, 4 (Tex. Crim. App.
2007); Ex parte Dietzman, 790 S.W.2d at 306–07 (granting habeas corpus relief in
form of out-of-time appeal to review contention of ineffective assistance of counsel
on appeal and returning appellant to point in time at which he may give written notice
of appeal so that he may then, “with aid of counsel, . . . obtain a meaningful appeal”);
see also Soto v. State, 51 S.W.3d 672, 674–75 (Tex. App.—Houston [1st Dist.] 2001,
pet. ref’d) (Mirabal, J., dissenting) (explaining that appellant is returned to point at
which notice of appeal may be given and all time limits are calculated thereafter as
if conviction had been entered on date that appellate court’s mandate issues); Whitley
v. State, No. 04-00-00231-CR, 2001 WL 715864, at *2 (Tex. App.—San Antonio
June 27, 2001, pet. ref’d). Appellant was also permitted to file a motion for new trial
to develop the record to support her ineffective assistance of counsel claim. See
Mestas, 214 S.W.3d at 4.
          Appellant filed a motion for new trial, to which she appended the affidavit of
her trial counsel, David Ward, who conceded that there were deficiencies in his
representation that were not grounded in trial strategy. Appellant’s motion for new
trial was overruled by operation of law. Appellant timely filed a new notice of
appeal.Ineffective Assistance of Counsel
          In her first issue, appellant contends that her trial counsel was ineffective
because he (1) failed to request a charge on mistake of fact; (2) failed to object to
Palmer’s testimony that the store previously had suffered an $800,000 inventory
shortage and that her investigation had focused on appellant as the perpetrator; (3)
failed to object to inadmissible testimony of Palmer that it was her opinion that
appellant attempted to assist the two women customers in stealing the merchandise;
and (4) failed to argue during closing that, because the charge had only authorized a
conviction of appellant as the primary actor, the jury was required to acquit appellant
if it believed that appellant acted only to assist the customers in committing theft.
A.      Standard of Review
          Appellant is entitled to reasonably effective assistance of counsel. See U.S.
Const. amend. VI; Tex. Const. art. I, § 10. The right to counsel, however, does not
mean the right to errorless counsel. Robertson v. State, 187 S.W.3d 475, 483 (Tex.
Crim. App. 2006). To prove ineffective assistance of counsel, appellant must show
that (1) counsel’s performance fell below an objective standard of reasonableness and
(2) that, but for the deficient performance of counsel, there is a reasonable probability
that the result of the proceeding would have been different. Strickland v.
Washington, 466 U.S. 668, 687, 694, 104 S. Ct. 2052, 2064, 2068 (1984); Andrews
v. State, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005). A “reasonable probability” is
a probability sufficient to undermine confidence in the outcome. Strickland, 466 U.S.
at 694, 104 S. Ct. at 2068.
          To prevail, appellant must prove ineffective assistance by a preponderance of
the evidence and must overcome the strong presumption that counsel’s conduct falls
within the wide range of reasonably professional assistance or might reasonably be
considered sound trial strategy. See Robertson, 187 S.W.3d at 482–83. A failure to
make a showing under either prong defeats a claim of ineffective assistance of
counsel. Rylander v. State, 101 S.W.3d 107, 110–11 (Tex. Crim. App. 2003).
          As the reviewing court, we look to the totality of the representation and to the
circumstances of the case, not to isolated errors. Robertson, 187 S.W.3d at 483–84.
We must consider the adequacy of assistance as viewed at the time of trial, not
through hindsight. Id. at 482–83.
          Additionally, we cannot speculate as to the reasons supporting counsel’s
behavior. See Bone v. State, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002). 
Allegations of ineffectiveness must be firmly founded in the record. Id. at 833 & n.13. 
In the absence of evidence of counsel’s reasons for the challenged conduct, an
appellate court should not find deficient performance unless the conduct was so
outrageous that no competent attorney would have engaged in it. Goodspeed v. State,
187 S.W.3d 390, 392 (Tex. Crim. App. 2005).
          1.       Mistake of Fact
          Here, appellant’s trial counsel, David Ward, submitted an affidavit in which he
attested that he was not adequately prepared for trial and that the trial court denied his
motion for continuance. Ward attested that the evidence showed that appellant made
an honest mistake when she did not charge the customers for all of the merchandise,
but that he did not request that the court instruct the jury on a mistake of fact defense
or object to the charge for omitting this instruction. Ward stated that he did not know 
why he did not request the instruction or object to the charge, that he should have,
and that his failure to do so was not strategic.
          “It is a defense to prosecution that the actor through mistake formed a
reasonable belief about a matter of fact if his mistaken belief negated the kind of
culpability required for commission of the offense.” Tex. Pen. Code Ann. § 8.02(a)
(Vernon 2003); Williams v. State, 930 S.W.2d 898, 902 (Tex. App.—Houston [1st
Dist.] 1996, pet. ref’d). When evidence from any source raises a defensive issue and
the defendant properly requests a jury charge on that issue, the trial court must submit
the issue to the jury. Mendoza v. State, 88 S .W.3d 236, 239 (Tex. Crim. App. 2002). 
A defendant is entitled to an instruction on any defensive issue raised by the evidence
regardless of whether the evidence is weak or strong, unimpeached or contradicted,
and regardless of what the trial court may think about the credibility of the defense.
See Hamel v. State, 916 S.W.2d 491, 493 (Tex. Crim. App. 1996). The issue is
whether the evidence cited by appellant, if believed, raises a mistake of fact defense
by negating appellant’s culpable mental state. Murchison v. State, 93 S.W.3d 239,
252 (Tex. App.—Houston [14th Dist.] 2002, pet. ref’d). Neither the trial court nor
this court decides whether appellant’s mistaken belief was reasonable; this question
is reserved for the jury. See Granger v. State, 3 S.W.3d 36, 39 (Tex. Crim. App.
1999). 
          Here, appellant was charged with having unlawfully appropriated property with
intent to deprive the owner of the property. See Tex. Penal Code Ann. § 31.03
(Vernon Supp. 2009). Hence, the culpable mental state that the State was required
to prove was intent to deprive the owner of the merchandise. 
          Palmer testified that she asked appellant if she had totaled up all of the
merchandise and that appellant responded that she might have made a mistake. In
addition, Palmer testified that appellant chased after the women, caught up with them,
and asked to check their bags for “a possible mistake.” This evidence, when viewed
in the light favorable to appellant and if believed by the jury, raises a mistake of fact
defense by negating that appellant intended to deprive the owner of the merchandise.
See Granger, 3 S.W.3d at 41; Murchison, 93 S.W.3d at 252. Appellant was therefore
entitled to a jury instruction on mistake of fact pursuant to section 8.02 of the Penal
Code. 
          Ward attested in his affidavit that he did not know why he did not request the
instruction or object to the charge, that he should have, and that his failure to do so
was not based on any strategy. We conclude that Ward’s failure to request the
instruction or to object to the omission of the instruction in the charge constituted
deficient performance.
          2.       Objectionable Testimony
          Next, Ward attested that he did not object to Palmer’s testimony that the store
had an inventory shortage of $800,000 just four months prior to the incident for
which appellant was on trial. Ward stated that this testimony was irrelevant,
prejudicial, and implied that appellant was at least partially responsible for the
shortage. Ward asserted that he should have objected to this testimony and that his
failure to do so was not strategic. Ward further attested that, because he had failed
to object to Palmer’s testimony concerning the inventory shortage, he subsequently
attempted to elicit testimony from Palmer that would show that she was prejudiced
against appellant and was simply trying to find “a scapegoat” for the inventory
shortage. Ward attested that the result, however, was that he elicited further
testimony from Palmer that appellant had committed other thefts and was partially
responsible for the inventory shortage. 
          A witness may not testify to a matter unless evidence is introduced sufficient
to support a finding that the witness has personal knowledge of the matter. Tex. R.
Evid. 602. Here, there was no evidence beyond Palmer’s pure conjecture regarding
other thefts and inventory shortages being attributable to appellant. 
          In sum, we agree with Ward that appellant has presented evidence of errors in
performance that fell below an objective standard of reasonableness. We next
consider whether appellant has affirmatively demonstrated a reasonable probability
that the outcome of her case would have been different but for counsel’s deficient
performance.
          Here, Palmer’s testimony that the store had, just four months prior to the
incident at issue, realized an $800,000 loss in inventory; that Palmer suspected that
appellant was at least partially responsible for the losses; that Palmer believed that
appellant had committed other thefts; and that it was her opinion that appellant had
participated in the transaction at issue, taken cumulatively, was significantly
prejudicial to appellant, especially in light of Palmer not having actually seen
appellant fail to ring up any items. Other than the testimony of Flinn, who appeared
on the sales floor only after the incident at issue, there was no other evidence
presented of appellant’s commission of the offense. Hence, the case rested entirely
upon the jury’s assessment of the credibility of the witnesses and the weighing of
circumstantial evidence. 
          Generally, we look to the totality of the representation and to the particular
circumstances of each case in evaluating the effectiveness of counsel. Thompson v.
State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). However, it is possible that a even
a single egregious error of omission or commission by appellant’s counsel “may be
sufficiently egregious, and its deleterious effect sufficiently pervasive and profound,
as to undermine our confidence in the result of the trial.” Ex parte Heidelburg, No.
AP-75,263, 2006 WL 3306880, at *5 (Tex. Crim. App. Nov. 15, 2006) (not
designated for publication).
          We conclude that appellant has shown a reasonable probability that the
outcome of trial would have been different had counsel properly requested a mistake
of fact instruction and had counsel objected to Palmer’s testimony without eliciting
further testimony by Palmer that lacked a substantive basis.


 
          Accordingly, appellant’s first issue is sustained.
 

Conclusion
The judgment of the trial court in the underlying conviction is reversed, and the
cause is remanded for a new trial.
 



Laura Carter Higley
Justice

Panel consists of Chief Justice Radack and Justices Keyes and Higley.

Do not publish. See Tex. R. App. P. 47.2(b).