

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-1620-12

**KODY WILLIAM FARMER, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SECOND COURT OF APPEALS
### TARRANT COUNTY

HERVEY, J., delivered the opinion of the Court in which KELLER, P.J., MEYERS, PRICE, WOMACK, KEASLER, and ALCALA, JJ., joined. COCHRAN, J., filed a concurring opinion in which JOHNSON, J., joined.

### O P I N I O N

Appellant, Kody William Farmer, was convicted of driving while intoxicated and sentenced to 90 days' confinement and to pay a $200 fine. His sentence of confinement was suspended for one year of community supervision. The question presented in this case is whether there was sufficient evidence adduced at trial to entitle Appellant to a jury-charge instruction on voluntariness. The court of appeals held that Appellant was

entitled to a voluntariness instruction. *See Farmer v. State*, No. 02-09-00278-CR, 2012 WL 1601311, at *6 (Tex. App.—Fort Worth Apr. 28, 2011). We will reverse the judgment of the court of appeals and affirm the judgment of the trial court.

## I. Facts

Appellant suffered from chronic back pain due to a work-related injury. As a result, he had taken different medications on and off for more than 10 years, including Ultram,[1] a painkiller, and Soma, a muscle relaxer. Also, four days prior to the incidents in question, Appellant was prescribed Ambien, a sleep aid, for the first time to assist with his insomnia. Ambien and Soma are considered controlled substances by the Federal Government, and all three drugs come with warnings that they may cause drowsiness.

In the morning, Appellant would usually take his Ultram, and sometimes his Soma, before getting in the shower. To help Appellant make sure he took his medication, Appellant's wife would lay out Appellant's medicine for him to take. The morning of the incident in question, Appellant's wife laid out his Ultram and Ambien on their microwave, but she separated the pills so that Appellant would take the Ambien at night because "both his doctor and his pharmacist recommended that he be within minutes of going to bed before taking Ambien."

During questioning following the accident, Appellant stated that he did not

---

[1]Throughout this opinion, we refer to the relevant prescription medications using their brand names for ease. However, the charging instrument uses the generic names of these medications. The generic name for Ultram is tramadol, the generic name for Soma is carisoprodol, and the generic name for Ambien is zolpidem.

remember taking any of his medication. But he did admit after watching a video of his actions that he did not have the normal use of his mental or physical faculties. Appellant testified that he took Ultram that morning and "I guess Soma. I thought -- is what I thought I was taking."[2] He also testified that he did not intentionally or voluntarily take Ambien, and that he does not know how it was introduced into his body because he had never taken Ambien before. However, in response to the question of how Ambien was found in his blood if he had never taken the medication before, he answered, "I don't know. I don't know. I guess it was taken by mistake."[3] Appellant's wife did not remember seeing Appellant take his medication that morning, but she remembered that "the Ambien I laid out for the night that was on the other side of [the] microwave was gone." She also testified that she was a hundred percent certain that "he took what I had laid out."

## II. Procedural posture

Appellant was charged with driving while intoxicated. At the close of evidence, the defense requested three jury-charge instructions.[4] Specifically, the defense argued that

---

[2]Appellant voluntarily submitted to the taking of a blood specimen the day of the incident, and he showed no traces of the drug Soma in his blood at or near the time of the incident in question.

[3]According to testimony, Appellant's blood sample showed a therapeutic level of the drug Ambien in his blood system.

[4]Appellant's requested instructions touched on involuntary intoxication, accident, and involuntary act. Specifically, the first and third proposed jury instructions discussed involuntary intoxication as an affirmative defense and defense respectively, and the second proposed instruction discussed voluntariness and accident. *Compare* TEX. PENAL CODE § 2.03(d), *with* TEX. PENAL CODE § 2.04(d). The first proposed instruction informed the jury that involuntary intoxication is an affirmative defense stated,

You are instructed that involuntary intoxication is an affirmative defense to prosecution. A person is involuntarily intoxicated when:
1. the accused has exercised no independent judgment or volition in taking the intoxicant; and
2. as a result of his intoxication he did not know that his conduct was wrong or was incapable of conforming his conduct to the requirements of the law he allegedly violated.

In order to satisfy #1, you are hereby instructed the accused:

1. was unaware he had ingested an intoxicating substance;
2. ingested an intoxicant by force or duress; or
3. took a prescribed medication according to the prescription.

Therefore, if you believe from the evidence beyond a reasonable doubt that on the occasion in question the defendant, DEFENDANT, did drive while intoxicated, as alleged in the information, but you further believe from the evidence, or you have a reasonable doubt thereof, that the driving was the result of an involuntary intoxication of the defendant, then you will acquit the defendant and say by your verdict "Not guilty."

The instruction marked number two at the charge conference stated,

A person commits an offense only if he voluntarily engages in conduct, including an act, or omission. Conduct is not rendered involuntary merely because the person did not intend the results of his conduct. Therefore, if you believe from the evidence beyond a reasonable doubt that the defendant . . . did not have the normal use of his mental or physical faculties by reason of the introduction of a controlled substance to-wit: zolpidem, tramadol, or a combination of two or more of these substances, but you further believe from the evidence, or have a reasonable doubt thereof, that [the defendant] took these drugs by accident, and was not the voluntary act or conduct of the defendant, you will acquit the defendant and say by your verdict "not guilty".

Proposed jury instruction number three stated that

You are instructed that involuntary intoxication by prescription medication, or medications, is a defense to prosecution for an offense when it is shown that the accused has exercised no independent judgment or volition in taking the intoxicant; and as a result of his intoxication he did not know that his conduct was wrong or was incapable of conforming his conduct to the requirements of the law he allegedly violated.

Appellant involuntarily took the Ambien because he thought that the Ambien was his muscle-relaxant medication, Soma. The trial judge discussed the possibility of including an instruction on voluntariness that "would encompass involuntary intoxication," but ultimately the trial judge overruled Appellant's objections and declined to charge the jury on any of the requested instructions. Appellant was found guilty and punishment was assessed at one year of confinement and a $200 fine. His confinement was probated for a term of twelve months.

Appellant appealed his conviction to the Fort Worth Court of Appeals, and the court reversed Appellant's conviction and remanded to the trial court. It held that the facts of this case are "most closely akin to an involuntary act because the evidence suggests that although Farmer voluntarily took the pills laid out for him by his wife, he involuntarily took the Ambien pill because of his wife's act." *Farmer*, 2011 WL 1601311,

---

Such a condition must have existed at the very time of the alleged commission of the offense.

* * *

Now, if you find from the evidence beyond a reasonable doubt that at the time and place, and on the occasion in question, the defendant, . . . did operate a motor vehicle in a public place while the said defendant was intoxicated by not having the normal use of his mental or physical faculties by reason of the introduction of a controlled substance, to-wit: zolpidem, a drug, to-wit: tramadol, a drug, or a combination of two or more of these substances, but you further find from the evidence, or you have a reasonable doubt thereof, that at such time the defendant was involuntarily intoxicated by prescription medication, and that he exercised no independent judgment in volition in taking the intoxicant, or intoxicants, or that he took a drug, by accident, and that as a result of his intoxication he did not know that his conduct was wrong or was incapable of conforming his conduct to the requirement of the law, then you will find him not guilty.

at \*6. As a result, Appellant was denied a defense that could have resulted in an acquittal, and he suffered some harm because of that error. *Id.* The court of appeals did not review the State's claim on appeal that the trial court correctly excluded the instructions because they improperly commented on the weight of the evidence. *Id.* The State filed a petition for discretionary review arguing that the court of appeals should have addressed the State's argument regarding the merits of the proposed instructions. We summarily granted the State's petition and remanded the case to the court of appeals to address the State's claim. *See Farmer v. State*, No. PD-1041-11, 2011 WL 4072126 (Tex. Crim. App. Sept. 14, 2011) (per curiam) (not designated for publication).

On remand, the court of appeals concluded that the same result was warranted—reversal and remand for a new trial. It held that, even if the proposed instructions impermissibly commented on the weight of the evidence, some evidence at trial raised the issue of voluntariness, which in turn entitled Appellant to *some* instruction on voluntariness, although not necessarily the proposed instructions. *See Farmer v. State*, No. 02-09-00278-CR, 2012 WL 4937104, at \*7 (Tex. App.—Fort Worth Oct. 18, 2012).

We granted the State's petition for discretionary review to determine if Appellant was entitled to a jury instruction (in any form) on the issue of voluntariness. We will reverse the judgment of the court of appeals and affirm the judgment of the trial court.

### III. Arguments

The State argues that no evidence was offered at trial to entitle Appellant to a jury

instruction on voluntariness. Therefore, the trial judge correctly denied Appellant's request for such an instruction. However, the State does not dispute that Appellant preserved his jury-charge objection under our caselaw and, as a result, would need to show that he suffered some harm if the trial judge erred, rather than egregious harm. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g).

Appellant concedes that he operated a motor vehicle in a public place while intoxicated, but he argues that because he involuntarily took his sleep-aid medication, he cannot be held criminally liable for his actions under Section 6.01(a) of the Texas Penal Code.[5] Specifically, Appellant contends that his wife's independent act of placing the Ambien on the microwave instead of his other medication raised at least a scintilla of evidence at trial that Appellant's actions were not voluntary, which entitled him to an instruction on the issue. Appellant further contends that the denial of his request for an instruction on voluntariness caused him some harm and, thus, his conviction should be reversed. *See Almanza*, 686 S.W.2d at 171.

## IV. The Law

Under Texas law, a person commits an offense if the person is intoxicated while operating a motor vehicle in a public place. TEX. PENAL CODE § 49.04(a). A person is intoxicated if he or she has a blood alcohol concentration of .08 or higher or does not

---

[5]The relevant portion of Section 6.01 states, "A person commits an offense only if he voluntarily engages in conduct, including an act, an omission, or possession." TEX. PENAL CODE § 6.01(a).

have the normal use of his mental or physical faculties. *Id.* § 49.01(2). In cases not involving alcohol, such as this case, the latter standard must be proven. The offense of driving while intoxicated is a strict liability crime meaning that it does not require a specific mental state (e.g., intentionally, knowingly, or recklessly intending to operate a motor vehicle while intoxicated), only a person on a public roadway voluntarily operating a motor vehicle while intoxicated. *See Owen v. State*, 525 S.W.2d 164, 164–65 (Tex. Crim. App. 1975); *Ex parte Ross*, 522 S.W.2d 214, 217–18 (Tex. Crim. App. 1975), *overruled on other grounds by*, *Ex parte McCain*, 67 S.W.3d 204 (Tex. Crim. App. 2002).

Because Appellant's jury-instruction arguments touched on the defenses of "accident" and "involuntary act," we think it is also helpful to address those issues. We have previously discussed the relationship between the two theories. *See Rogers v. State*, 105 S.W.3d 630 (Tex. Crim. App. 2003). In *Rogers*, we held that the claim of "accident" was not interchangeable with the claim of "involuntary act" because the defense of "accident" was applicable only to offenses committed under the former Penal Code. *Id.* at 638. We explained that, when the Texas Penal Code of 1974 was adopted, the Legislature abandoned the "accident" approach as a catch-all, in favor of the more precise approach taken by the American Law Institute in the Model Penal Code. *Id.* at 637–38. Part of that new approach included a rejection of the defense of "accident," which ambiguously addressed the physical actions and the mental state of a criminal defendant. *Id.* at 638–39. Instead, the drafters adopted two separate defenses to replace the defensive theory of

"accident." *Id.* at 639. The first, and relevant one here, is "involuntary act," which focuses solely on physical acts of the accused and is now found in Section 6.01(a) of the Texas Penal Code. The second defense, which focuses on the defendant's state of mind at the time of the incident, requires a culpable mental state, the absence of which can be used to defend oneself from criminal liability. Thus, to avoid ambiguity in the law, the old defense of "accident" was divided into its constituent parts—the defense of "involuntary act" and the defense that a defendant lacked the requisite mental state to commit the crime. *Id.* at 638; *see also* 43 George E. Dix & John M. Schmolesky, *Texas Practice: Criminal Practice and Procedure* § 43:34 (3d ed. 2011).

Section 6.01(a) of the Texas Penal Code places a restriction on offenses listed in the Penal Code. *See* TEX. PENAL CODE § 6.01(a). In relevant part, it states that "a person commits an offense only if he voluntarily engages in conduct, including an act" or "an omission." *Id.* Thus, to be guilty of driving while intoxicated, the accused must meet the requirements of the driving-while-intoxicated statute and have voluntarily engaged in an act or omission. *See* TEX. PENAL CODE §§ 6.01(a), 49.04(a). In discussing what is meant by the requirement of a voluntary act, we have stated that

> before criminal responsibility may be imposed, the actor's conduct must "include[ ] either a voluntary act or an omission when the defendant was capable of action." The operative word under Section 6.01(a), for present purposes, is "include." Both the Model Penal Code comments and the Practice Commentary to the 1974 Texas Penal Code stress that the "voluntary act" requirement does not necessarily go to the ultimate act (e.g., pulling the trigger), but only that criminal responsibility for the harm must "include an act" that is voluntary (e.g., pulling the gun, pointing the gun, or

cocking the hammer).

*Rogers*, 105 S.W.3d at 638 (footnotes omitted). We have also stated that voluntariness, as described by Section 6.01(a), "refers only to one's own physical body movements[,]" and that a movement is considered involuntary only if that movement is "the nonvolitional result of someone else's act, [was] set in motion by some independent non-human force, [was] caused by a physical reflex or convulsion, or [was] the product of unconsciousness, hypnosis or other nonvolitional impetus . . . ." *Id.* Thus, a voluntary act that comprised a portion of the commission of the offense is sufficient to satisfy the requirement of Section 6.01(a), even if that voluntary act was accidental or the consequences of that act were unintended.[6]

With respect to when a defendant is entitled to a jury instruction on a defensive issue, this Court has long held that a defendant is entitled to a jury instruction on a defensive issue if it is raised by the evidence, regardless of the strength or credibility of

---

[6]*See Brown v. State*, 955 S.W.2d 276, 279 (Tex. Crim. App. 1997). Sections 6.01(a) and 6.02 of the Texas Penal Code operate in tandem. Section 6.01(a) requires that, for a defendant to be guilty of a crime, the commission of that crime must include at least one voluntary act. This requirement is referred to as the actus reus in criminal law. Section 6.02 describes the mental states (i.e., mens rea) that must accompany the commission of an applicable crime for a defendant to be found guilty of a criminal offense. However, Section 6.02 does not apply to all crimes. That is, for the commission of some criminal offenses, the defendant need not have a "guilty mind" or intent to commit a crime to be guilty of an offense because committing the prohibited conduct is sufficient. These offenses are called strict-liability offenses. *See* TEX. PENAL CODE §§ 6.01(a), 6.02. For example, a person who voluntarily appropriates another person's property will not be held criminally liable for those actions if the person thought that the property was abandoned because the person did not intend to deprive the owner of their property. *See* TEX. PENAL CODE § 31.03(a). However, some criminal offenses, such as driving while intoxicated, do not require a culpable mental state, only a voluntary act.

that evidence. *Granger v. State*, 3 S.W.3d 36, 38 (Tex. Crim. App. 1999). Thus, viewing the evidence in the light most favorable to Appellant, we must decide if there was some evidence adduced at trial to warrant a jury instruction on the defensive issue of voluntariness. *Id.*

## V. Discussion

Viewed in the light most favorable to Appellant, the record reflects that Appellant's wife laid out the medication that Appellant was supposed to take the day of the accidents. Likewise, the record also reflects that Appellant's wife testified that one of the medications was Ambien, and that later, she saw that both pills she had set out for her husband were gone. Presumably, Appellant ingested both pills by mistake, including the Ambien.[7] That theory is supported by the blood-test results that showed Appellant had Ambien in his system at, or near, the time of the incident, although he had testified that he had never taken Ambien before.

Appellant's argument on discretionary review is limited to asserting that Appellant did not voluntarily take the Ambien pill. Thus, we do not address any other conduct on the part of Appellant.

The court of appeals focused on whether the action of Appellant's wife's in placing the Ambien on the microwave caused Appellant to involuntarily take the Ambien because he thought it was a different prescription medication. However, whether

---

[7]Appellant's wife testified that it was her fault that Appellant took his Ambien because she did not place the pills far enough apart from each other on top of the microwave.

Appellant took Ambien by mistake or on purpose is irrelevant to our analysis when determining if there was a voluntary act under Section 6.01(a) of the Texas Penal Code. The proper inquiry in this case is whether Appellant voluntarily picked up and ingested prescription medication. *Rogers*, 105 S.W.3d at 637–38 (stating that "[v]oluntary conduct 'focuses upon conduct that is within the control of the actor'"). Even Appellant admitted that he thought that he took the Ambien by mistake,[8] and no evidence contradicted that testimony. To the contrary, as we noted, the blood test supported that hypothesis.

All that is necessary to satisfy Section 6.01(a) of the Texas Penal Code is that the commission of the offense *included* a voluntary act. *See Rogers*, 105 S.W.3d at 638. Appellant makes no allegation that his arm movement to pick up and ingest the

---

[8]Mistake of fact can be a defense to a criminal offense if "the actor through mistake formed a reasonable belief about a matter of fact if his mistaken belief negated the kind of culpability required for commission of the offense." TEX. PENAL CODE § 8.02(a). However, this defense is available only if the reasonable mistake of fact negates a mental state required by the offense. *Celis v. State*, 2013 WL 2373114, at *8 (Tex. Crim. App. May 15, 2013); *Beggs v. State*, 597 S.W.2d 375, 377–78 (Tex. Crim. App. [Panel Op.] 1980). To illustrate, if a doctor reasonably believes that he is prescribing a controlled substance to a patient for a valid medical purpose, but the patient is selling the drug for a profit, an issue of mistake of fact exists. The fact issue is whether the doctor reasonably, but erroneously, believed that he was dispensing a controlled substance for a valid medical purpose. If the doctor's belief was reasonable, then the State could not prove an essential element of the crime—that the doctor did not dispense the controlled substance for a valid medical purpose. *See Hill v. State*, 765 S.W.2d 794, 796–97 (Tex. Crim. App. 1989).

Here, Appellant's belief that he was not taking Ambien does not negate an element of the crime of driving while intoxicated. As we have previously noted, driving while intoxicated is a strict-liability offense that requires no culpable mental state. As a result, even if Appellant formed a reasonable belief that he was taking a different medication, like Soma as he alleged, a mistake-of-fact argument fails because intent to drive intoxicated is not an element of the crime. And more relevant to the disposition of this case, Appellant agrees that he took the medication laid out for him that day of his own volition.

medication was the result of anything other than his own conscious action, and no other

evidence at trial supported Appellant's request for a jury instruction on voluntariness.

Appellant may have mistakenly taken the wrong prescription medication, but the evidence

supports the conclusion that he voluntarily picked up the prescription medication from the

microwave and ingested it.[9] Stated another way, this is not a case of unknowingly or

unwillingly taking pharmaceutical medication (similar to *Torres*); this is a case of

knowingly taking pharmaceutical medication but *mistakenly* taking the wrong one. While

we may be sympathetic to a "mistake," Appellant was involved in two accidents because

of his "mistake." Even if Appellant took the medication in error, that error was made

because Appellant did not take the time to verify the medication he was taking, although

he knew that he was prescribed medications that could have an intoxicating effect. Based

on the foregoing analysis, we hold that the trial court properly denied Appellant's request

---

[9]Appellant argues that "if a third person causes the accused to become intoxicated, such as by slipping a 'mickie' in his drink or forcing him to take an intoxicant and get behind the wheel, then the [in]voluntary conduct defense is available." We agree. *See Torres v. State*, 585 S.W.2d 746 , 748 (Tex. Crim. App. [Panel Op.] 1979) (holding that the appellant was entitled to a jury charge on involuntary intoxication because there was evidence that the appellant "did not know that any intoxicant [e.g., thorazine] was included in the preparation she drank. Although she voluntarily drank the preparation, unless she knew it contained the drug her actions were not a volitional consumption of the intoxicant"); *Hanks v. State*, 542 S.W.2d 413, 415–16 (Tex. Crim. App. 1976) (holding that the appellant was not entitled to a jury charge on involuntary intoxication because "[i]f appellant was aware that a suspected drug had been placed in his drink, as he testified, and in spite of such knowledge he drank the beverage, any intoxication resulting therefrom could not be classified as Involuntary"). Appellant's argument, however, fails to acknowledge the relevant distinction in these cases: Appellant was not forced to take the Ambien (he testified that he voluntarily picked it up and ingested it), and the medication was not given to him unknowingly (he knew that he was taking medication but he *mistakenly* took the wrong medication).

to include a defensive instruction on voluntariness, even when the evidence is viewed in the light most favorable to Appellant.

## VI. Conclusion

We conclude that Appellant's action in taking the Ambien pill was a voluntary act because Appellant, of his own volition, picked up and ingested the Ambien pill. It is of no consequence that Appellant mistakenly took the wrong prescription medication when he knew that he was taking a prescription medication and was aware that he was prescribed medications with intoxicating effects. Moreover, because no other evidence at trial raised an issue of Appellant's voluntariness in taking that medication, the trial court properly denied Appellant's request. As a result, the court of appeals erred when it reversed the judgment of the trial court. We reverse the judgment of the court of appeals and affirm the judgment of the trial court.

Hervey, J.

Delivered: October 9, 2013

Published